SMALL, J.T.C.
Plaintiff, Sharps, Pixley, Inc. (“SPI”), contests the June 3, 1994 denial by the defendant, Director, Division of Taxation, (“Director”) of a claim for refund of taxes paid under the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40. The matter is before the court on a stipulated record pursuant to R. 8:8-1(b).
There is no dispute that for the tax years 1980, 1981, 1983 and 1984, SPI overpaid its corporation business tax (“CBT”). There is also no dispute as to the amount of those overpayments. The Director has denied the refunds on the grounds that SPI failed to file a timely report of federal changes as required by the statute *629 and the Director’s regulations. There are three issues for determination: (1) Did SPI timely file its report of federal changes with the Director? (2) If SPI failed to timely file the report, is the Director’s regulation requiring that the report of federal changes be filed within ninety days a valid precondition for the filing of a claim for refund? (3) If the refunds are barred by the statute and regulation, may SPI offset its 1978 tax liability against its 1980 tax overpayment, pursuant to N.J.S.A. 54:49-16(b)?
I.

History of Federal and New Jersey Filings

SPI is a non-resident dealer in precious metals whose New Jersey CBT liabilities arise out of its maintenance of a warehouse and inventory in Carteret, New Jersey. SPI is the wholly-owned subsidiary of Kleinwort Benson Holdings, Inc. (“KBHI”) which files a consolidated federal corporation income tax return.
A. Tax Years 1975-1979
On or about August 1, 1980, KBHI filed an amended 1978 federal tax return to reflect changes in certain accounting and inventory pricing practices. Consistent with its amended federal income tax filing, on or about December 1, 1980 SPI filed an amended 1978 New Jersey CBT return reflecting the changes made on the federal return. The filing of the amended federal return triggered an audit by the Internal Revenue Service (“IRS”) of KBHI’s consolidated returns for the tax years 1975-1979. That audit ultimately resulted in net federal refunds and a 1978 New Jersey CBT deficiency which was assessed by the Director on June 25,1981. On October 13,1987, Coopers & Lybrand, KBHI’s accountants for its federal returns, forwarded an undated Revenue Agent Report (“RAR”) to its client reflecting the IRS examiner’s adjustments to KBHI’s federal returns.[1]
*630 The proposed adjustments in the RAR were used by the IRS to prepare its report to the Joint Committee on Taxation (“Joint Committee”) under Section 6405(a) of the Internal Revenue Code of 1986 to request refunds for KBHI for the 1975-1979 audit period.[2] By letters dated December 7, 1988, the IRS informed KBHI and SPI that the report to the Joint Committee required by Section 6405(a) was being prepared and that a request to process refunds for 1978 and 1979 had been made. By letter dated January 13,1989, the IRS informed KBHI that the Joint Committee had taken “no exception” to the processing of the 1978 and 1979 refunds, but that such letter was not a final notification of the IRS conclusions regarding the amended returns for those years. By letters dated February 27 and 28, 1989, the IRS informed KBHI and SPI, respectively, that the report required by Section 6405(a) was being forwarded to the Joint Committee, and enclosed a copy of the February 22, 1988 RAR which was the basis for the report. On July 26, 1990, the IRS and KBHI entered into a Closing Agreement for tax years 1978 through 1988 with respect to accounting methods and the treatment of certain bullion transactions. By letter dated October 16, 1990, the IRS informed KBHI that the Joint Committee “has taken no exception to the conclusions the Internal Revenue Service reached in your income tax case for the [1976,1977 and 1979 tax years].”
B. Tax Years 1980-1988
Some time after the filing of KBHI’s 1988 consolidated federal income tax return, the IRS initiated an audit of KBHI’s 1980 through 1988 tax returns. By undated letter, the IRS sent KBHI *631 a September 26, 1991 RAR with respect to the 1980-1988 audit period, and stated that the Section 6405(a) report to the Joint Committee had not yet been prepared, but that a request to process net refunds provided in the RAR had been made. By letter dated December 3 or 8, 1991, the IRS repeated its prior communication to KBHI, stating that the Section 6405(a) report to the Joint Committee had not yet been prepared, but that permission to process the refunds provided in the RAR for tax years 1984, 1987 and 1988 had been made. By letter dated January 13, 1992, the IRS informed KBHI that the Joint Committee had taken “no exception” to the processing of refunds for the 1984,1987 and 1988 tax years, and that the letter was not a final notification of the IRS conclusions for the those years. Checks dated March 16 and 17,1992 from the United States Treasury Department reflecting payment of refund and interest were issued to KBHI for the 1980-1988 audit period. By letter dated May 5, 1992, the IRS informed KBHI that the Joint Committee “has taken no exception to the conclusions the Internal Revenue Service reached in your income tax case for the [1980-1988 tax years].”
C. Correspondence With IRS After May 5, 1992
Beginning in June 1992, KBHI and its accountants were engaged in extensive discussions with the IRS regarding the correct interest calculation on the refunds paid for the 1980-1988 audit period. This issue was separate and apart from the IRS adjustments to KBHI’s consolidated federal income tax return, and was resolved in May 1994.
By letter dated November 3, 1992, Coopers & Lybrand, acting on behalf of KBHI, inquired of the IRS concerning when KBHI may expect to receive final RARs for the 1980-1988 audit period, and a final notice concluding the audit. In response, by letter dated December 8,1992, the IRS advised Coopers & Lybrand that “[t]he final letter dated May 5,1992 states that the Joint Committee on Taxation has taken no exception to the Internal Revenue Service conclusions. The [Internal Revenue] Manual requires no further communication. In short, the examination has been completed; no further Internal Revenue Service action is contemplat *632 ed and the refund already made under the expedite [sic] refund procedures has been concurred by the Joint Committee.”
D. Refund Request from New Jersey
By letter dated January 21, 1993, which was received by the New Jersey Division of Taxation on January 25, 1993, SPI filed forms IRA-100 for the tax years 1978 through 1988 reflecting the adjustments to the CBT and the refunds owed as a result.[3]
By letter dated February 25, 1993, the Division advised SPI (i) that its refund claims for 1980,1981,1983 and 1984 were denied as untimely pursuant to N.J.A.C. 18:7-13.8(d), (ii) that its request to offset its 1978 CBT liability against its 1980 CBT overpayment was denied because the 1978 liability was part of a separate federal audit from the 1980 overpayment, and (iii) that its request to offset its 1985 CBT liability against a portion of its 1980 overpayment was allowed because they were part of the same federal audit. By letter dated March 26, 1993, SPI protested these preliminary determinations by the Division. By letter dated June 3, 1994, the Division issued its revised determinations in which it affirmed the denials of SPI’s refund claims for 1980,1981, 1983 and 1984, and assessed a CBT deficiency for the 1978 tax year in the amount of $68,973, which was later reduced to $30,270.
SPI filed this action in the Tax Court challenging the authority of the Director to promulgate a regulation under the Corporation Business Tax Act which bars the filing of refund claims if the reports of federal changes are not filed within ninety days of the final determination of the IRS. SPI also asserts that regardless of such authority, SPI timely filed its report of federal changes with the Division because it did not receive a final determination letter from the IRS until December 8, 1992. Finally, SPI claims that it may offset its 1978 deficiency against its 1980 overpayment because both tax years, although in different federal audits, in *633 volved the same accounting issues which were part of a single Closing Agreement with the IRS.
II.

The Statutory and Regulatory Framework

The State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 to :50-28, authorizes the Director to grant refunds of overpaid taxes. N.J.S.A. 54:49-14, in effect during the relevant time periods in this matter, provided:
Any taxpayer, at any time within two years [since amended by L. 1992, c. 175, § 5 (effective July 1, 1993) to provide for a four-year statute of limitations period from the date the tax was paid] after the payment of any original or additional tax assessed against him, unless a shorter time is fixed, by the law imposing the tax may file with the commissioner a claim under oath for refund, in such form as the commissioner may prescribe, stating the grounds therefor, but no claim for refund shall be required or permitted to be filed with respect to a tax paid, after protest has been filed with the commissioner or after proceedings on appeal have been commenced as provided in this subtitle, until such protest or appeal has been finally determined.
{Id. (emphasis added).]
If a corporate taxpayer undergoes a federal audit that results in adjustments to its New Jersey CBT liabilities, including adjustments that result in refunds, the CBT requires notification to the Division of Taxation of such changes. N.J.S.A. 54:10A-13, in effect during the relevant time periods in this matter, provides:
If the amount of taxable income for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue or other officer of the United States or other competent authority, or where a renegotiation of a contract or subcontract with the United States results in a change in said taxable income, or where a recovery of a war loss results in a computation or recomputation of any tax imposed by the United States, such taxpayer shall report such changed or corrected taxable income, or the results of such renegotiation, or such computation or recomputation, within 90 days after the final determination of such change or correction or renegotiation, or such computation or recomputation, or as required by the commissioner, and shall concede the accuracy of such determination or state wherein it is erroneous. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended report with the commissioner.[4]
*634 [/A (emphasis added).]
Prior to July 1, 1993, N.J.S.A. 54:49-14 did not expressly provide for refund claims after the two-year period following the payment of the tax, even following a federal adjustment as the result of an audit. However, prior to the July 1993 amendment to N.J.S.A. 54:49-14, on October 2, 1989 the Director had amended his regulations on refund claims to reflect his interpretation that N.J.S.A. 54:49-14 and N.J.S.A. 54:10A-13, when read together, provide for an extension of the statute of limitations for refunds for two years on the condition that the report of federal changes is filed with the Division of Taxation within ninety days of the final determination of the IRS. N.J.A.C. 18:7-13.8(d), as of December 20,1993, read:
Where a taxpayer files a Report of Changes in Corporate Taxable Net Income by the U.S. Internal Revenue Service pursuant to N.J.A.C. 18:7-11.8(a) [requiring the report of changes to be filed with the Division within 90 days] that results in a diminution of entire net income for any year, the two year limitation period for filing a claim for refund based on that diminution for the return year at issue begins on the date that the timely filed Form IRA-100 is filed with the Division. For reports filed on or after July 1, 1993, the limitation period is four years. Unless the IRA-100 or CBT-100-X is filed in timely fashion under N.J.A.C. 18:7-11.8(a), the refund claim will not be considered.
[Id. (emphasis added).]
III.
Was SPI’s Filing of the 90-day Notice of Federal Charges Timely ?
SPI contends that it timely filed the ninety-day report with the Division of Taxation. The parties dispute the date of the final determination letter from the IRS which triggered the ninety-day period for filing the required report. The Director argues that the final determination letter from which the ninety-day period *635 began to run was the May 5, 1992 letter stating the Joint Committee “has taken no exception to the conclusions the Internal Revenue Service reached in your income tax case for the [1980— 1988 tax years].” SPI argues that the letter dated December 8, 1992 was the final determination letter from which the ninety-day notice requirement commenced. The parties agree that the taxpayer filed the required report on January 21,1993.
By letter dated December 3 or 8,1991, the IRS informed KBHI that the Section 6405(a) report had not yet been sent to the Joint Committee, but that a request to process the refund claims was made. By letter dated January 13,1992, the IRS informed KBHI that the Joint Committee had taken no exception to the processing of the refund claims. This same letter also made clear that the letter was not a final approval by the Joint Committee, and that such notice would be forwarded at a later date. On March 16 and 17, 1992, checks were issued to KBHI from the United States Treasury Department representing refunds and interest for the 1980-1988 audit period. By letter dated May 5, 1992, the IRS informed KBHI that the Joint Committee had taken no exception to the conclusions of the IRS with respect to the 1980-1988 audit.
The sequence of events during the 1980-1988 audit was exactly the same as that of the 1975-1979 audit, and KBHI received identical letters for each audit period. SPI claims, however, that there was one critical difference between the two audits that led it to believe that the 1980-1988 audit was not closed by receipt of the May 5, 1992 letter. SPI asserts that it was told orally by a revenue agent that it would receive the final RAR before or at the time it received the final determination letter from the IRS. SPI claims it never received the final RAR.
As a result, Coopers & Lybrand wrote to the IRS on November 3, 1992 asking when its client could expect to receive its final notice and RARs for the 1980-1988 audit so that it could file its amended returns with New York and New Jersey. In response, the IRS District Director wrote on December 8, 1992, that “the final letter” of May 5, 1992 stated that the Joint Committee took no exception to the IRS conclusions, the IRS required no further *636 communication, and the examination had been completed. Thus, SPI deemed the audit to be closed with the December 8, 1992 letter, and in turn filed its report of federal changes to the Director on January 21,1993, within ninety days.
The parties agree that federal law controls the issue of when the IRS made its final determination. See, e.g., Dumont v. Commissioner of Taxation, 278 Minn. 312,154 N.W.2d 196 (1967) (rejecting state’s definition of final determination for purposes of triggering the ninety-day reporting requirement of federal audit changes). However, no federal statute, regulation, or IRS guideline specifically addresses the issue.
For the following reasons, I have concluded that the May 5, 1992 “no exception” letter constituted the final determination of the IRS that the 1980-1988 audit was closed, and the adjustments made were approved.
First, the IRS stated in the December 8,1992 letter to Coopers & Lybrand that it considered the May 5, 1992 letter final for its purposes. Second, KBHI and SPI should have known that the “no exception” letter from the IRS was equivalent to a declaration of a final determination. This is particularly the ease when the taxpayer had already received its refund from the Treasury Department. Third, KBHI could not rely on the receipt of a final RAR during the 1975-1979 audit as an indication that it would receive one during the 1980-1988 audit. SPI’s own documents suggest that there was no anticipation of any further report after the initial RAR in the 1975-1979 audit which Coopers & Lybrand labeled in its cover letter to KBHI as the “final report.” Fourth, SPI could not rely on the events during the 1975-1979 audit to gauge when the final determination was received since SPI ignored its obligation to file a report of federal changes after that first audit for over two years. KBHI received a “no exception” letter dated October 16, 1990 from the IRS for the 1975-1979 audit, but did not file its report of federal changes for the 1978 tax year reflecting additional CBT due until January 21, 1993. Fifth, KBHI acted as if the May 5, 1992 letter, coupled with receipt of the March 1992 refund checks, was final by immediately engaging *637 the IRS in a discussion regarding the calculation of interest on the refunds. There was no dispute with regard to the underlying determination of tax liability or amount of refund due. If KBHI thought that the refunds were not final and were subject to adjustments, it would not have initiated such protracted discussion and correspondence until it received a final notice or was confident that such adjustments were indeed final. In fact, a letter dated June 11, 1992 from Coopers & Lybrand to the IRS regarding the interest calculation on the refunds characterized the 1980-1988 audit as “recently completed.” None of the correspondence from Coopers & Lybrand to the IRS ever suggested that it, or its client, considered the audit period open or subject to a final determination by the Joint Committee or the IRS. At oral argument, SPI did not dispute the assertion that no further discussion or correspondence regarding the refunds (other than the interest calculation) occurred after the May 5, 1992 “no exception” letter.
SPI’s reliance on the receipt of an RAR as the final determination of the IRS was clearly misplaced. In other circumstances, most notably correction of errors under Sections 1311-1314 of the Internal Revenue Code of 1986, a “final determination” does not occur for purposes of refund claims by the receipt of an RAR. See, e.g., United States v. Rachal, 312 F.2d 376, 379-80 (5th Cir.1962); Louis Pizitz Dry Goods Co. v. United States, 185 F.Supp. 186, 188 (N.D.Ala.1960) (both holding that an RAR was not a final disposition for purposes of a claim for refund). Instead, it is the receipt of the payment of refund that is the final determination under those provisions. Rachal, supra, 312 F.2d at 380.
There could also be no misunderstanding of the language in the “no exception” letter from the IRS to KBHI. By statute, the Joint Committee does not need to take any affirmative action to approve a refund. Rather, the IRS must merely wait for thirty days after the submission of the required report to the Joint Committee before processing the refund. IRC Sec. 6405(a). Thus the “no exception” letter means that the Joint Committee *638 chose to take no action with respect to the IRS’s recommendation of a refund, which statutorily is all that is necessary to initiate refund payments. The “no exception” phrase is standard language used by the IRS in approving refunds under either the regular procedure or on an expedited basis. Internal Revenue Manual (“IRM”) Ex. 4570-2.
As a matter of practice, the IRS and the Joint Committee will permit refunds on an expedited basis before the Joint Committee has had an opportunity to consider the statutory report. IRM 457(10).3. This is part of an effort to prevent long delays in the processing of refunds which the IRS believes are clearly allowable. The IRS will submit a tentative report to the Joint Committee with a request for a refund, issue a “no exception” letter for the refund after the passing of thirty days, and then process the refund. IRM 8114 HB 3(11)3. However, the refund is still subject to the final “no exception” letter which is issued after the final statutory report has been submitted to the Joint Committee and thirty days have passed again. If the Joint Committee determines that the refund was inappropriate, the “no exception” letter will not be issued, and instead the IRS will have to initiate litigation for an erroneous refund under IRC Sec. 7405. Nowhere does the IRS in its Internal Revenue Manual state that the finality of the refund is contingent on any document other than the “no exception” letters. Certainly the combination of both the refund and the “no exception” letter makes clear that the determination by the IRS with respect to the refund was final.
SPI and its accountants should have been aware of the IRS expedited refund procedures, and if they thought that a final RAR was forthcoming, they should have taken steps to question why a refund and “no exception” letter were received without an RAR. To do nothing for six months with knowledge of N.J.S.A. 54:10A-13 does not demonstrate good faith and diligent efforts to protect one’s interests, and thus not even equitable relief is warranted in these circumstances. H.B. Acquisitions, Inc. v. Director, Div. of Taxation, 12 N.J.Tax 60, 69 (Tax 1991). It would appear that the November 3,1992 letter from Coopers & Lybrand to the IRS was *639 an effort to obtain a new “final determination” letter when it was realized that the ninety-day period from the May 5, 1992 letter had lapsed.[5] Thus the final IRS determination was made on May 5,1992. The report of federal audit changes was not submitted to the Director until January 21, 1993, more than ninety days later. The report was filed late under N.J.S.A. 54:10A-13 and N.J.A.C. 18:7-13.8(d).
IV.

The Validity of the Ninety Day Notice Requirement Under N.J.A.C. 18:7-13.8(d)

The parties agree that the Director had the authority under N.J.S.A. 54:10A-27 and Olin Mathieson Chemical Corp. v. Kingsley, 119 N.J.Super. 102, 290 A.2d 304 (App.Div.1972), to extend the statute of limitations period for refund claims for two years following the report of adjustments from a federal audit. The plaintiff, however, disputes the authority of the Director to condition that extension on the requirement that the taxpayer file the notice of federal changes within ninety days of the final determination of the adjustments of the IRS.
N.J.S.A. 54:10A-27 of the CBT provides that “[t]he commissioner shall prescribe and issue rules and regulations, not inconsistent herewith, for the interpretation and application of the provisions of this act, as he may deem necessary.” L. 1945, c. 162, § 28. This statutory provision grants interpretive regulatory authority (as opposed to legislative authority) to the Director. General Building Products Corp. v. Div. of Taxation, 14 N.J.Tax 232, 248 (Tax 1994), aff'd, 15 N.J.Tax 213 (App.Div.1995). However, any regulation that is inconsistent with the statute is invalid. Richard’s Auto City, Inc. v. Director, Div. of Taxation, 12 N.J.Tax 619, 640-41, 641 n. 9 (Tax 1992), rev’d on other grounds, *640 270 N.J.Super. 92, 636 A.2d 572 (App.Div.1994), rev’d, 140 N.J. 523, 659 A.2d 1360 (1995). The regulation, if interpretive, is retroactive to the effective date of the statute granting the authority. Richard’s Auto City, supra, 12 N.J.Tax at 640-41. Thus, the Director’s regulation is a valid interpretation of the CBT from the statute’s effective date if the regulation does no more than interpret and construe the statutory languaige in the act.
“[T]he standards applicable to judicial review of the validity of regulations promulgated by an administrative agency” can be summarized as follows:
(1) Administrative regulations are to be accorded a presumption of reasonableness, and the attacking party bears the burden of demonstrating that the regulations are arbitrary, capricious, unduly onerous or otherwise unreasonable.
(2) Regulations must be within the fair contemplation of the enabling statute, but the court is not confined to a consideration of the statutory authority for a particular regulation, but may consider the entire enabling legislation.
(3) The grant of authority to an administrative agency is to be liberally construed in order to enable the agency to accomplish its statutory responsibilities, and the courts should readily imply such incidental powers as are necessary to effectuate fully the legislative intent.
(4) Courts are not free to substitute their judgment as to the wisdom of a particular administrative action for that of the agency so long as the action is statutorily authorized and not otherwise defective because arbitrary or unreasonable.
[Richard’s Auto City, supra, 12 N.J.Tax at 627, citing New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-63, 384 A.2d 795 (1978) (citations omitted).]
In Olin Mathieson, supra, 119 N.J.Super. 102,290 A.2d 304, the Appellate Division heard a challenge to the predecessor of N.J.A.C. 18:7-13.8. The court reviewed the authority of the state tax director to promulgate Regulation 16:10-6.100 under the authority of N.J.S.A. 54:10A-27. The regulation stated in part, and as quoted in Olin Mathieson:
If the amount of the taxable income for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue * * * the taxpayer shall file a report of such change or correction or an amended return within 90 days after the final determination of any such change, correction * * *. At any time thereafter, within five years from the date of filing of the report of such change or correction or an amended return, the director may reexamine the return, recompute and reassess the tax * * * and shall notify the taxpayer thereof.
*641 [Olin Mathieson, supra, 119 N.J.Super. at 105,290 A.2d 304]
In upholding the validity of Regulation 16:10-6.100 to the extent that it permitted the Director an additional five years to assess the CBT against the taxpayer following a federal audit adjustment, the court found that
A state whose corporation tax depends to some extent on the taxpayer’s net income and which established a time limitation running from the date on which a return is filed would find itself at the mercy of the federal bureaucracy. Whenever the federal authorities did not audit a return within the established time period (in our case within five years), which is apparently a fairly common occurrence despite a stated three-year limitation, that state would lose deserved revenue. There would also be present the possibility — not suggested as present here — that a corporation could take certain steps which would delay the federal audit beyond a state’s statute of limitations, and whether those steps were taken in good or bad faith would be difficult to determine and should be irrelevant. It cannot be presumed that our Legislature intended to place New Jersey and its citizens in so disadvantageous a position. On the contrary, we deem, it reasonable to assume that the Legislature intended that the five-year limitation on N.J.S.A. 5i:10A-19.1(b) should begin to run from the date that a report of the federal recomputation of a corporation’s taxable income is filed with the Division of Taxation.
The decision below is consistent with the general principles that everyone should shoulder a just portion of the weight of taxation and that doubts about proper statutory construction should be resolved against those seeking to escape that equitable burden.
[Id. at 107, 290 A.2d 304 (emphasis added) (citations omitted).]
The Appellate Division thus determined that the Director was reasonable in interpreting the CBT to extend the statute of limitations on assessments forever if the taxpayer failed to file a report of federal changes, and to limit the statute of limitations to five years from the date the report was filed. The court’s decision was based on the premise that the State’s power to assess deficiencies could not be held hostage to federal audits that may or may not be within the control of the taxpayer and that could continue well beyond the original five-year assessment period. The question remains whether that same logic and rationale applies equally to refund claims of taxpayers.
In reviewing the validity of a regulation under the CBT, the court in Richard’s Auto City, supra, examined the plain meaning of the statute, its legislative history, and other statutes with similar statutory frameworks as the one under consideration.
*642 As for the plain m.eaning of the two provisions in this case, it is clear that the court cannot derive any specific interpretation of the relationship between N.J.S.A. 54:49-14 and N.J.S.A. 54:10A-13. The two provisions are in separate acts, the former in the State Tax Uniform Procedure Law and the latter in the Corporation Business Tax Act, and neither have references or cross-references to each other. Thus there is no plain meaning for the court to declare.
As for the legislative history of the two statutes, only Olin Mathieson, swpra, provides case law guidance. That decision is the only one to suggest the authority of the Director to extend the statute of limitations periods under the CBT, an issue not in dispute in this matter. The ninety day notice requirement did not arise as an issue because failure to file the report of federal changes did not affect the Director’s ability to make an assessment; thus taxpayers did not have an incentive to file timely the report as they would in a refund case such as the within matter.
The interpretive history of the CBT, however, sheds some light on legislative intent. Since 1989, the Director has explicitly interpreted the CBT as conditioning refunds on filing the notice of federal changes within ninety days. 21 N.J.R. 1503(b), 3177(a). Although the Legislature has amended the CBT since that time, it has not overridden the Director’s interpretation of the purpose of the ninety-day notice as a condition to filing a refund claim.[6] The court in Olin Mathieson held that “[w]here an agency charged with administering an act has given it a certain construction, that construction must be accorded weight in ascertaining the statutory meaning, particularly where the interpretation is of some years’ standing and uniformity.” Olin Mathieson, supra, 119 N.J.Super. *643 at 108, 290 A.2d 304 (citation omitted). The Legislature has not made any amendments to the CBT which have affected the Director’s 1989 interpretation that the ninety-day reporting requirement is a condition imposed on refund claims based on federal changes after the expiration of the two-year (and subsequently four-year) statute of limitations. Such inaction supports the Director’s contention that his interpretation is consistent with the statutory requirements.
As for a comparable statutory framework, plaintiff relies on the interpretation of the Gross Income Tax (“GIT”) Act by the Tax Court in Stelnik v. Director, Div. of Taxation, 13 N.J.Tax 141 (Tax 1993). N.J.S.A. 54A:8-7, a section of the GIT, provides that taxpayers must file the report of federal changes within ninety days of the final determination. In Stelnik, the taxpayers failed to file timely the report of federal changes, but did file their amended returns and refund claims within two years of the determination as provided by N.J.S.A. 54A:9-8(c). The taxpayers argued that because N.J.S.A. 54A:8-7 was silent as to the consequences of noncompliance with the ninety-day notice requirement, there could be no sanction and the refund claims should be permitted. The Director argued that the Legislature would not intentionally use meaningless or superfluous language, and thus the ninety-day notice requirement must have been intended to serve as a limiting condition on the extended statute of limitations.
The court in Stelnik found that there were no consequences, with regard to refunds, for failure to report the federal changes within ninety days under the GIT. The court based its reasoning on the Legislature’s explicit language in N.J.S.A. 54A:9-4(c)(1)(C) of the GIT which provides that failure to report timely the federal changes permits the Director to assess a tax against the taxpayer at any time. Thus the court concluded:
[TJhe Legislature chose to spell out the consequences of a taxpayer’s failure to report an increase in federal taxable income, and the consequences of a taxpayer’s compliance with N.J.S.A. 54A:8-7 in reporting such increase. The Legislature’s failure to spell out the consequences of noncompliance with N.J.S.A. 54A:8-7 when the federal change was a decrease in income can only be viewed as deliberate.
[Stelnik, supra, 13 N.J.Tax at 145.]
*644 SPI contends that the CBT is similarly silent with respect to noncomplianee with the ninety-day reporting requirement as to refunds, but provides for sanctions in the case of deficiencies. N.J.S.A. 54:10A-19.1(b) provided, until amended after the relevant time period in this case, that failure to file returns, as required by law, permitted the Director to assess the CBT at any time, or for five years from the date the return is finally filed. Additionally, N.J.S.A. 54:49-4 provides that failure to timely file returns will result in a $100 per month penalty, plus 5% of the total tax liability per month. N.J.A.C. 18:7-13.8(c)(3) provides that the report of federal changes is deemed an amended return.
The Director argues that the critical distinction between the GIT and the CBT is the language that ties the ninety-day reporting requirement to the statute of limitations. The Legislature provided in the GIT that the two-year statute of limitations period for refund claims runs “from the time the notice of such [federal] change or correction or such amended return was required to be filed with the director.” N.J.S.A. 54A:9-8(c). No comparable language exists in the CBT. Instead, the Director has provided the only source for an extension of the limitations period in the CBT, providing in N.J.A.C. 18:7-13.8(d) that the period is triggered from the actual reporting of the federal changes. Thus, without a regulation that fixes a date certain from which the two-year (or subsequently four-year) extended refund statute of limitations period begins to run (the filing of the ninety-day report), the taxpayer could indefinitely extend the limitations period for refund claims.
Unlike the GIT, in which the Legislature made a conscious effort to establish a comprehensive and independent tax scheme in one title of the New Jersey Statutes, the CBT requires cross reference and reliance on the State Tax Uniform Procedure Law and the Director for its operation and administration, as is evidenced by the several provisions that are cited and examined by the parties in their arguments to the court. No provision in the CBT or the State Tax Uniform Procedure Law makes reference to N.J.S.A. 54:10A-13, and similarly, that statute makes no reference to any other provision. There is simply no way to adduce a *645 specific legislative intent with respect to the ninety-day reporting requirement and the statute of limitations period for the CBT. The lack of a comprehensive approach to the CBT prevents any interpretation by this court that the Legislature sought to issue sanctions for failure to report the federal changes with respect to assessments, but not with respect to refunds, as SPI suggests. Additionally, striking the ninety-day notice requirement would leave the extended statute of limitations following a federal audit without a fixed starting point (at least for refund claims prior to the July 1, 1993 effective date of the amendment to N.J.S.A. 54:49-14). This would leave taxpayers in control of the statute of limitations period, a concept inconsistent with Vicoa, Inc. v. Director, Div. of Taxation, 166 N.J.Super. 496, 400 A.2d 105 (App.Div.1979). See also Gifford v. Director, Div. of Taxation, 15 N.J.Tax 51, 57 (Tax 1995), quoting Peoples Express Co. v. Director. Div. of Taxation, 10 N.J.Tax 417, 424 (Tax 1989) (disapproving an interpretation of the statute which would allow the taxpayer to control the time frame for taking tax appeals).
The Legislature left several areas in the CBT open to interpretation by the Director. Those interpretations were made by the promulgation of Title 18, Chapter 7 of N.J.A.C. (and subsequently by the Legislature itself, for example in the amendment to N.J.S.A. 54:10A-13 by L. 1992, c. 175 § 19). To be valid, such regulation merely needs to be reasonable and in fair contemplation of the statute’s purpose. The Director asserts that the ninety-day reporting of federal changes is, as a condition for refund claims, intended to provide notice to the State of pending outlays within the next two years, which is necessary for the State to responsibly manage the public fisc. Such an interpretation of the CBT and the ninety-day reporting requirement is reasonable and not arbitrary or capricious. Thus N.J.A.C. 18:7 — 13.8(d) must be upheld as a valid exercise of the Director’s authority.
V.

The Setoff Issue

SPI asserts that regardless of its failure to file timely its refund claim with the Director, it is entitled to offset its 1978 CBT *646 liability against its 1980 CBT overpayment under N.J.S.A. 54:49-16(b). That statute provides:
Where no questions of fact or law are involved and it appears from the audit of any taxpayer that a State tax has been erroneously or illegally collected from such taxpayer, or has been paid by such taxpayer under a mistake of fact or law, the director may, within the time in which a deficiency assessment of that tax may be made, credit the erroneous overpayment of tax to the account of the taxpayer to offset the amount of a deficiency assessment; provided, however, that a credit shall only be applied to offset a liability for a period covered by the assessment period and shall only be granted with respect to a deficiency assessment made by the director under the same State tax as the erroneous overpayment
[L.1987, c. 76, § 10 (emphasis added).]
The Director has promulgated N.J.A.C. 18:2-2.10 which provides:
(a) Where it is determined as a result of the audit of any taxpayer that a State tax has been erroneously or illegally collected from such taxpayer, or has been paid by such taxpayer under a mistake of law or fact, and where no question of law or fact are [sic] involved, the Director may credit the erroneous overpayment of tax to the account of the taxpayer to offset the amount of a deficiency assessment. Such offsets will be made with the following limitations:
1. Credit for the erroneous payment must be made within the time in which a deficiency assessment must be made for such tax as provided by law; and
2. Credit shall only be applied in order to offset a liability for a period which is covered by the applicable assessment period; and
3. Credit for erroneous overpayments shall only be made to offset a deficiency assessment made by the Director under the same state tax law.
(b) An audit of a taxpayer can only be initiated by the Division and not at the request of a taxpayer. [ (Emphasis added).]
The Director contends that the statute, on its face, limits offsets to those liabilities and overpayments arising during the same assessment period, which the Director interprets (but not in the regulation) to mean audit period. SPI’s 1978 liability arose during the 1975-1979 federal audit period, while the 1980 overpayment arose during the 1980-1988 federal audit period. SPI counters that the 1978 and 1980 tax years, although technically in separate audits, all deal with the same issues and were essentially treated as one audit by the IRS (as is evidenced by the July 26, 1990 Closing Agreement which covered tax years 1978 through 1988). The Director also reads the statute as requiring that the taxpayer have paid the tax under mistake of fact or law, and claims that *647 SPI “voluntarily” changed its method of accounting in 1980 that resulted in the overpayment and thus there was no “mistake.”
First, with respect to the Director’s claim that an offset only applies where the taxpayer has made a mistake of fact or law, this is a misreading of the statute. N.J.S.A. 54:49-16(b) states that an offset is permitted where the tax is erroneously or illegally collected, or the taxpayer paid the tax under a mistake of fact or law. An “erroneous” payment need not be one that is the result of a mistake of fact or law. In the within matter, KBHI changed its accounting method because it determined that it was more appropriate for its accounting practices to use the LIFO method. This resulted in an overpayment of its CBT in one year, and an underpayment in another. The failure to use the LIFO method earlier was the reason for the erroneous overpayment. A fair interpretation of the statute requires a broad reading of the term “erroneous” to include overpayments that are the result of events other than mistakes of fact or law. There is nothing in the statute nor the regulations that can be read to limit this language.
Second, nowhere in the statute or the regulations is there a definition of the term “assessment period” as it appears in N.J.S.A. 54:49-16.[7]
However, the term can be read to mean that definition given to it by the statute being applied. N.J.S.A. 54:48-1 to :50-28 is the State Tax Uniform Procedure Law, and any terms that appear in that statute which are not otherwise defined should be construed *648 in para materia with the statute to which it is being applied. See Vicoa, supra, 166 N.J.Super. at 502, 400 A.2d 105 (stating that “[statutes in pari materia, that is, those which relate to the same matter or subject, although some may be special and some general, are to be construed together as a unitary and harmonious whole, in order that each may be fully effective”), quoting City of Clifton v. Passaic Cty. Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958). The court in Vicoa found that N.J.S.A. 54:49-14 of the State Tax Uniform Procedure Law was in pari materia with N.J.S.A. 54:10A-19.2(a) of the CBT. Vicoa, supra, 166 N.J.Super. at 502, 400 A.2d 105. This case also requires interpretation of both the State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 to :50-28, and the Corporation Business Tax Act, N.J.S.A. 54:10A-1 to -40.
The CBT defines its own assessment period. For the period at issue in this case, N.J.S.A. 54:10A-19.1(b) reads, in part:
Except in the case of a willfully false or fraudulent return with intent to evade the tax, no assessment or additional tax shall be made after the expiration of more than 5 years from the date of the filing of a return; provided, that where no return has been filed as provided by law, the tax may be assessed at any time.
The Director provided in N.J.A.C. 18:7-13.1(e), and as was determined by Olin Mathieson, supra, that the assessment period is extended for five years from the date of the filing of the report of federal changes or an amended return. Additionally, the taxpayer and the Director may enter into an agreement to extend the assessment period.
It is logical and reasonable that the assessment period in the CBT should be the assessment period referred to in the State Tax Uniform Procedure Law. Thus, as long as the assessment period was open for the 1978 tax year at the time of the refund claim for the 1980 tax year, SPI would be entitled to an offset under N.J.S.A. 54:49-16(b). For SPI’s 1978 tax year, the assessment period closed five years from the filing of the amended return on December 1, 1980. Absent an agreement between the Director and KBHI to extend that period, the assessment period should be deemed to have expired on December 1, 1985. The *649 Director assessed additional tax for the 1978 tax year on June 25, 1981, well within that period.
The report of federal changes with respect to the 1978 tax year, however, was not completed until January 21,1993, the same date the report of federal changes was completed for the tax years 1980-1985. Although this filing was over two years late under N.J.S.A. 54:10A-13, the assessment period is extended for an additional five years from the date of filing the report of federal changes under Olin Mathieson, supra. Thus the assessment period for the 1978 tax year was open on January 21, 1993 when the 1980 tax year refund claim was filed. Although SPI cannot voluntarily file the report of federal changes late so as to reopen and extend the assessment period in order to obtain the offset, see Vicoa, supra, 166 N.J.Super. at 502-03, 400 A.2d 105 (rejecting taxpayer’s interpretation of CBT refund statute that would permit the taxpayer to control the extension of the statute of limitations), SPI’s 1978 tax year assessment period would have been open on January 21, 1993 even if it complied with N.J.S.A. 54:10A-13 and filed the report of federal changes in late 1990 when the IRS issued a “no exception” letter for the 1975-1979 audit. Thus, SPI is entitled to offset its 1978 deficiency against its 1980 overpayment since the assessment periods for both tax years were open at the time the refund claim was made. The fact that both years were included in the same July 26, 1990 Closing Agreement with the IRS lends further support to the argument that both years fell within the same “assessment period.”
VI.

Summary

The taxpayer, SPI, failed to file the report of federal changes within ninety days of the final determination by the IRS.
N.J.A.C. 18:7-13.8(d), which requires that reports of federal changes be filed within ninety days of a final determination from the IRS as a condition of filing refund claims after the refund *650 statute of limitations (absent the federal changes) has expired, is valid.
For purposes of the setoff provided by N.J.S.A. 54:49-16(b), the 1978 deficiency arose during the same assessment period as the 1980 overpayment. Accordingly, SPI is entitled to offset its 1978 deficiency by the amount of the 1980 non-refimdable overpayment.
Defendant will submit a form of judgment pursuant to R. 4:42-1.

 Revenue Agent Reports are reflected on Form 4549-A and detail the IRS examiner's recommended changes to the taxpayer's return.

 The Joint Committee on Taxation is a committee of ten congressmen who oversee the payment of large refunds by the IRS to taxpayers. Section 6405(a) of the Internal Revenue Code of 1986 requires the IRS to issue a report to the Joint Committee for any refund or credit in excess of $1,000,000, providing the name of the taxpayer, the amount of the refund or credit, and a summary of the facts and the decision of the IRS. The refund or credit is not permitted until 30 days have expired from the issuance of the report, during which time the Joint Committee may either object to or approve the refund or credit. Procedures exist for refunds to be paid on an expedited basis prior to Joint Committee approval to prevent delays in processing where the taxpayer is clearly allowed the refund. Internal Revenue Manual, ("IRM”) Sec. 457(10).3.

 Form IRA-100 is the Report of Changes in Corporate Taxable Income by the U.S. Internal Revenue Service to be filed with the New Jersey Division of Taxation pursuant to N.J.S.A. 54:10A-13.

 The following sentence, effective July 1, 1993, was added to N.J.S.A. 54:10A-13 by L. 1992, c. 175, § 19. “The periods of limitation to make deficiency *634 assessments under R.S. 54:49-6 and to file claims for refund under R.S. 54:49-14 shall commence to run for additional four year periods from the date that taxable income is finally changed or corrected by the Commissioner of Internal Revenue; provided, that the additional periods of limitation shall only be applicable to the increase or decrease in tax attributable to the adjustments in such changed or corrected taxable income."

 This appearance is supported by the specific reference lo New York State, New York City, and New Jersey amended return requirements in the November 3, 1992 letter to the IRS.

. N.J.S.A. 54:10A-13 was amended, effective July 1, 1993, to establish a fixed point from which the new statute of limitations period would begin to run following a federal audit. See L. 1992, c. 175, § 19 (providing that the new four-year statute of limitations period begins to run from the date that taxable income is finally changed or corrected by the Commissioner of Internal Revenue). This represents a change from N.J.A.C. 18:7-13.8(d) in which the Director provided that the statute of limitations period began to run from the date the report of federal changes (the ninety day report) was timely filed.

 In Sea-Land Serv., Inc. v. Director, Div. of Taxation, 16 N.J.Tax 132 (Tax 1996), appeal pending, Dkt. No. A 1565-96T3 (Nov. 25, 1996), the Tax Court equated “assessment period” with “audit period” in N.J.S.A. 54:49-16(b) when it stated the three requirements of the statute: “(1) an audit found an erroneous overpayment of a tax, (2) a deficiency was assessed against the taxpayer for the same audit period, and (3) both the deficiency assessment and the overpayment arise under the same state tax.” Sea — Land Svc., supra, 16 N.J.Tax at 135 (emphasis added). The court provided no authority for its statement that the statute required the offsetting deficiency and liability arise in the same audit period. Further, that case involved a taxpayer attempting to offset a deficiency with an overpayment that arose within the same audit period. Thus, the definition of “assessment period” was not an issue determined in that case.