LASSER, P.J.T.C.
Taxpayer, H.B. Acquisitions, Inc., seeks a refund of New Jersey corporation business tax (CBT) paid for December 1, 1984 through January 9, 1985 (short period), in the amount of $185,791.00, plus interest. The Director denied the refund, determining that the claim for refund was not timely filed. The facts have been stipulated by the parties, and the parties have filed cross motions for summary judgment.
*62 I.
Taxpayer is a corporation used in the acquisition of Hills Brothers Coffee Company by Nestle’s Holdings, Inc. (Nestle) on or about January 9, 1985. In early January 1985, Nestle also acquired the Carnation Company and in May acquired a third company. On July 10, 1986, Nestle filed its Internal Revenue Code, § 338[1] election with respect to these acquisitions, which required the inclusion of “recapture” income in taxable income, pursuant to Internal Revenue Code, §§ 291, 1245 and 1250. Such election requires that all assets of the acquired corporations be appraised and the acquisition price allocated to each asset.
The Hills Brothers acquisition resulted in the termination of taxpayer’s fiscal year. Taxpayer filed a New Jersey CBT-100 return on February 21, 1986 for the short period (initial NJ-CBT-100), reporting a CBT liability of $462.
On July 17, 1986, taxpayer filed a second NJ-CBT-100 for the short period (second NJ-CBT-100). The words “Amended Final Return” appear at the top of this return. This return shows a net tax liability of $297,792. This amount was paid to the Division of Taxation at the time this return was filed. At the time of filing the second NJ-CBT-100, the asset appraisal for § 338 purposes had not been completed and, therefore, in preparing this return, taxpayer estimated its recapture income but did not indicate on the return that the income was estimated. An amended federal tax return (form 1120X) and a copy of the July 10, 1986 § 338 election accompanied the second NJ-CBT-100.
On December 7, 1987, the Internal Revenue Service (IRS) issued an information documentation request to Nestle and subsidiaries, including the Nestle acquisition of Hills Brothers. *63 A December 8, 1987 IRS notice advised taxpayer that its tax returns, including those associated with the acquisition, were part of the coordinated examination program and that a case manager had been assigned. Subsequent to this notice, conferences were held with the IRS.
On May 6, 1988, Hills Bros. Coffee, Inc. (not H.B. Acquisitions, Inc.) filed a claim for refund of CBT in the amount of $339,922 for 1985, including the short period.[2] In a September 19, 1988 letter to Hills Bros. Coffee, Inc., the Director denied the refund claim and assessed additional tax, interest and penalties. Thereafter, in response to a protest by Nestle, the Director reduced interest to the statutory minimum and waived penalties.
At a November 1, 1988 conference with the IRS, recapture income associated with the § 338 election was discussed. This conversation was memorialized in a November 3, 1988 letter from Nestle to the IRS. That letter reads in relevant part:
As we agreed in our meeting on November 1, 1988 to assist you in the audit of the various IRC Section 338 transactions included in the 1985 tax year we will make every effort to file the 1985 amended [Nestle] Consolidated U.S. Corporation Income Tax Return as soon as possible. This amended return will reflect only amendments as to the effects of the Section 338 transactions ... as we also agreed we may be further amending the 1985 tax year filing with respect to items other than Section 338.
On March 15, 1989, taxpayer filed a second amended federal tax return for the short period showing recapture income after completion of the § 338 appraisals, which income was less than reported on the initial federal tax return. This amended return did not result in a refund to taxpayer but rather an increase in its loss carry forward. No adjustments have been made to this amended return by taxpayer, and the IRS has taken no action with respect to this return.
On June 15, 1989, taxpayer filed the claim for refund here in issue with the Division of Taxation. The claim is for the short period, makes reference to the payment of $297,792 made on *64 July 17,1986 and seeks a refund of $185,791. Attached thereto is the March 15, 1989 amended federal tax return.
II.
The Director contends that taxpayer is out of time to file a claim for refund for the period in question. N.J.S.A. 54:49-14 provides the taxpayer with a period of two years from the date of payment of a tax within which to file a claim for refund. Since taxpayer filed a return and paid tax for the short period on July 17, 1986, the Director contends that the period for claiming a refund expired on July 17, 1988.
Taxpayer presents three arguments to support its contention that the refund claim is timely. First, taxpayer contends that it reported changes to the Division that were the result of an IRS audit. Second, taxpayer contends that the June 15,1989 refund claim also constitutes taxpayer’s final return for the period in question because the initial and second CBT-100 contained only estimated figures. Finally, taxpayer contends that equitable considerations compel the conclusion that the claim for refund be deemed timely filed. Taxpayer contends that because of the magnitude of the task of appraising the acquired assets to comply with § 338, the asset appraisal was not completed until after July 17, 1988, and thus it was “virtually impossible” to comply with the two-year claim for refund filing requirement.
III.
The timely claim for refund issue must be resolved by reference to the following statutes and regulation.
The statutes that permit a claim for refund are:
Any taxpayer, at any time within two years after the payment of any original or additional tax assessed against him, unless a shorter time is fixed by the law imposing the tax, may file with the [Director] a claim under oath for refund. [N.J.S.A 54:49-14.]
Where no questions of fact or law are involved and it appears from the records of the [Director] that any moneys have been erroneously or illegally collected from any taxpayer or other person or have been paid by any taxpayer or other person under a mistake of fact or law, the [Director] may any time, within two years of payment, unless a shorter limit is fixed by the law imposing the tax, upon making a record in writing of his reasons therefor, certify to the comptroller that the taxpayer is entitled to such refund and thereupon the *65 comptroller shall authorize the payment thereof from the appropriation for such purpose.
[N.J.S.A. 54:49-16.]
The regulation effectuating these provisions provides in pertinent part:
(a) The two year statute of limitations period for filing a claim for refund commences to run from the later of the payment of tax for the taxable year or from the filing of the final return for the taxable year. The due date of the return is deemed the payment date if filing and payment are made prior to the due date. A claim for refund is considered filed on the date it is received by the Division of Taxation____
(d) Where a taxpayer files a Report of Changes in Corporate Taxable Net Income by the U.S. Internal Revenue Service pursuant to N.J.A.C. 18:7—11.8(a) that results in a diminution of entire net income for any year, the two year limitation period for filing a claim for refund based on that diminution for the return year at issue begins on the date that the timely filed Form IRA-100 is filed with the Division____
(e) Where a taxpayer files an amended return with the Internal Revenue Service (Form 1120X) and files an amended return with the State of New Jersey within 90 days pursuant to NJ.A.C. 18:7—11.8(b), to be considered a timely refund claim such claim must be filed with the Division of Taxation within two years of the later of filing or payment of the original return self assessment (CBT-100).... [NJ.A.C. 18:7-13.8.]
“Public policy discourages suits for the refund of taxes erroneously paid or illegally collected.” Continental Trailways, Inc. v. Director, Division of Motor Vehicles, 102 N.J. 526, 548, 509 A.2d 769 (1986), cert. dism. 481 U.S. 1001, 107 S.Ct. 1636, 95 L.Ed.2d 195 (1987). It is a “well-established principle that statutes of limitation applicable to suits against the government are conditions attached to the sovereign’s consent to be sued and must be strictly construed.” Kreiger v. United States, 539 F.2d 317, 320 (3 Cir.1976). See also McCullough Transportation Co. v. Division of Motor Vehicles, 113 N.J.Super. 353, 360, 273 A.2d 786 (App.Div.1971); Bristol-Myers Co. v. Director, Division of Taxation, 3 N.J.Tax 451, 459 (Tax 1981), aff’d 9 N.J.Tax 88 (App.Div.1986), certif. den. 107 N.J. 121, 526 A.2d 189 (1987).
Resolution of taxpayer’s first contention regarding changes by the IRS requires reference to the following statute and regulation.
*66 N.J.S.A. 54:10A-13 (§ 13) requires a taxpayer to report IRS changes to the Division:
If the amount of the taxable income for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue or other officer of the United States or other competent authority, ... such taxpayer shall report such changed or corrected taxable income ... within 90 days after the final determination of such change or correction ... or as required by the [Director], and shall concede the accuracy of such determination or state wherein it is erroneous. Any taxpayer filing an amended return with such department shall also file within 90 days thereafter an amended report with the [Director].
In addition to N.J.A. C. 18:7-13.8(d) and (e) referred to above, the following regulation is relevant:
(a) The report of change or correction in Federal taxable income as the result of an Internal Revenue Service audit must be reported to the Division of Taxation within 90 days of issuance of the report.
(b) Any taxpayer which files an amended return with the United States Treasury Department must file an amended New Jersey Corporation Business Tax return within 90 days thereafter____ [N.J.A.C. 18:7-11.8.]
The parties focus the dispute on whether taxpayer reported its federal tax changes to the Division under N.J.A.C. 18:7-11.8(a) (IRS audit change) or 18:7-11.8(b) (amended federal return), and therefore whether the refund claim period is governed by N.J.A.C. 18:7-13.8(d) or -13.8(e).
Taxpayer contends that furnishing the IRS, at its request, with an amended tax return is sufficient to constitute a change or correction by the IRS. The Director disputes this, contending that the filing of an amended tax return with the IRS, even in the context of an audit, cannot affect the two-year limitations period for refunds. Such an interpretation, the Director argues, would allow taxpayers to avoid the two-year limitations period at will.
Taxpayer further contends that it used its June 15, 1989 claim for refund to report its IRS changes. Taxpayer argues that neither the statute nor regulations prescribe the form to be used in reporting IRS changes to federal income, and that the form could be either an IRA-100, entitled “Report of Changes in Corporate Taxable Net Income by the U.S. Internal Revenue Service,” or an amended CBT-100. Taxpayer also contends *67 that “[plaintiffs Claim for Refund ... was filed pursuant to N.J.A.C. 18:7-11.8(a) and should be accepted in lieu of the IRA-100” and that “[t]echnical noncompliance with the regulation should not affect Plaintiffs right to relief.”
N.J.A.C. 18:7-13.8(d), under which taxpayer seeks to classify its claim for refund, states that “[ujnless the IRA-100 is filed in timely fashion under N.J.A.C. 18:7-11.8(a), the refund claim will not be considered.” The express language of the statute and the title of the report do not support taxpayer’s contention that the regulations do not prescribe the form to report IRS changes.
The triggering event in the first sentence of § 13 is a change or correction by the IRS of taxpayer’s taxable income. N.J.A.C. 18:7-11.8(a) characterizes this event as a change or correction “as the result of an Internal Revenue Service audit.” In this case, taxpayer’s evidence of a purported IRS request actually is a request for information to assist in the audit. Taxpayer’s action, i.e., the March 15, 1989 filing of the second amended federal return, is not a change or correction by the IRS as the result of an IRS audit. This IRS request does not constitute the kind of official action contemplated by § 13.
Both the federal income tax and the CBT are, in the first instance, based on self-assessments by taxpayers, subject to redetermination by the respective taxing authorities. Section 13 requires taxpayers to report changes in federal taxable income to the Director. However, self-assessment and redetermination by the taxing authority are two distinct methods of arriving at a tax liability and are treated as such. See Vicoa, Inc. v. Director, Division of Taxation, 166 N.J.Super. 496, 400 A.2d 105 (App.Div.1979); Olin Mathieson Chemical Corp. v. Kingsley, 119 N.J.Super. 102, 290 A.2d 304 (App.Div.1972). In this case, taxpayer’s actions fall squarely into the category of self-assessment and within the literal language of N.J.A.C. 18:7-11.8(b), and therefore, are not governed by N.J.A.C. 18:7-13.8(d). Because taxpayer filed an amended return in the context of an audit at the request of the IRS does not change *68 the self-assessing character of that filing. There is no proof that the figures in the second amended federal return were figures changed or corrected by the IRS.[3] The only evidence offered by taxpayer on this issue is a letter prepared by the taxpayer indicating a request by the IRS for the amended return to assist in the audit.
In view of my finding that taxpayer’s claim for refund was not the result of changes or corrections by the IRS, I need not address the issue of whether the refund claim here in issue met the requirements of N.J.A.C. 18:7-13.8(d).
Taxpayer’s second argument, that the initial and second CBT-100 were not final returns, but that the June 15, 1989 refund claim constituted its “final return” because it was the first communication from taxpayer to the Director containing “actual” figures for the period in question, is equally meritless. Under this argument, taxpayer relies on Olin Mathieson, supra. In that case, the court ruled that the five-year limitations period within which the Director may make an additional CBT assessment[4] begins to run only upon the filing of the report of IRS change called for in § 13.
Taxpayer relies on the reasoning of Olin Matkieson in support of its contention that the limitations period for filing a refund claim should not begin until the filing of its final return and that the June 15, 1989 refund claim, not the second CBT-100, was its final return.[5] If taxpayer were correct, the limitations period could not be effectively enforced. Any late filing could thus be characterized as a final return so long as the *69 taxpayer asserted that the figures on earlier returns were estimated.[6]
Further, the CBT act and regulations do not provide for the filing of an “estimated return.” The full amount of taxpayer’s tax obligation for the accounting period is due on or before the date prescribed for the filing of the return. N.J.S.A. 54:10A-15; N.J.A.C. 18:7-13.6. The amended CBT return is due by the 15th of the fourth month following the close of the accounting period. N.J.A.C. 18:7-11.7. To recognize taxpayer’s initial CBT-100 and second CBT-100 as statements of estimated tax obligations, and the payment of tax with the second CBT-100 as an estimate of taxpayer’s tax obligation, would be contrary to the purposes of the CBT act.
I therefore reject taxpayer’s contention that it did not file a final return before filing the June 15,1989 refund claim. Thus, taxpayer’s reliance on Olin Mathieson does not advance its case.
In addition, taxpayer could have requested an extension of the time within which to file a return. N.J.S.A. 54:10A-19. This option, which taxpayer chose not to exercise, is intended to accommodate taxpayers who need more time to determine their tax obligation.
Finally, equitable considerations do not compel a decision in taxpayer’s favor. While one may appreciate the effort required of taxpayer to appraise assets and to determine actual tax liability, this task does not excuse taxpayer from complying with the statutory limitations period. Equity demands more than good faith; it demands diligence in the protection of one’s own interests. A substantial amount of time passed between the January 1985 Nestle acquisition of taxpayer and the filing of the initial CBT-100 on February 21,1986. It is reasonable to conclude that any reasonably prudent taxpayer knew, within *70 this time frame, of the need to appraise its assets for § 338 purposes, and taxpayer has offered nothing to suggest otherwise. Nevertheless, taxpayer failed to request an extension of time in which to file its final return. The need to appraise the assets of the several acquired corporations was, after all, a consequence of taxpayer’s decision to elect I.R.C. § 338 treatment.[7]
Summary judgment is granted in favor of the Director and against taxpayer, and the Clerk of the Tax Court is directed to enter judgment dismissing taxpayer’s complaint.

Under § 338, a corporation purchasing the stock of another corporation may elect, subject to the requirements of the section, to treat the purchase as if the assets of the acquired corporation were purchased. The election provides the purchasing corporation with a new basis in the assets of the acquired corporation.

On November 29, 1985, taxpayer H.B. Acquisitions, Inc. was merged into this wholly-owned subsidiary.

To the contrary, taxpayer’s brief states ”[p]laintiff performed the necessary computations." Further, neither an IRS audit report nor a notice of determination has been submitted in evidence.

See N.J.S.A. 54:10A-19.1(b).

Taxpayer’s interpretation of Olin Matkieson bears on its contention regarding changes by the IRS. In view of my finding that taxpayer's actions were not governed by NJ.A.C. 18:7-11.8(a) and -13.8(d), I need not address this interpretation as it relates to taxpayer’s first contention.

I reject taxpayer's contention that the amounts on the earlier returns were obviously estimated amounts because the numbers are rounded. The Director cannot reasonably be required to discern such subtle notification.

At oral argument, the Director also contended that the taxpayer's complaint to the Tax Court was untimely on the ground that the May 6, 1988 claim for refund filed by Hills Bros, was the subject of a final determination of the Director denying the claim and no appeal was taken from the determination. See N.J.S.A. 54:51A-14 (taxpayer has 90 days within which to appeal a final determination by the Director). I note that this final determination is not stated as an affirmative defense in the answer to the complaint. However, in view of the foregoing opinion, it is not necessary to address this issue.