KUSKIN, J.T.C.
This Corporation Business Tax matter requires an interpretation of N.J.S.A. 54:10A-13 which obligates a corporate taxpayer to notify defendant, the Director of the New Jersey Division of Taxation (“Director”), of changes or corrections made by the Internal Revenue Service (“IRS”) in the computation of the corporation’s taxable income. Plaintiff seeks substantial refunds based *441 on changes made by the IRS. The Director contends that no refunds are due because plaintiff failed to file timely reports of the IRS changes. The issues presented for resolution by the court are:
*
1. whether the changes in plaintiffs income reported to the Director were changes made by the IKS;
2. whether plaintiff filed timely reports of changes made by the IRS as required by N.J.S.A. 54:10A-13; and
3. whether the Director, in extending by regulation the period for refund claims based on IRS changes, could require timely reporting of those changes as a condition to qualifying for the extension
Based on the following discussion and analysis, I hold that, with two exceptions, the changes in income which plaintiff reported to the Director were IRS changes, but that plaintiff did not file timely reports of the IRS changes and the Director’s regulation validly limited qualification for the extended refund claim period to those taxpayers filing timely reports of changes. Consequently, plaintiff’s refund claims must be denied.

Factual Background

Plaintiff, a New Jersey corporation, was the target of a hostile takeover by Brown-Forman Brands, Ltd., which occurred in 1983. Thereafter plaintiff filed an election under § 338(g) of the Internal Revenue Code. This election resulted in the federal income tax treatment of Brown-Forman’s purchase of plaintiffs stock as a purchase by plaintiff of its own assets which then acquired a new basis. The new basis consisted of the total of the amount paid by Brown-Forman for the purchase plus liabilities assumed and the tax liability resulting from the purchase.
Plaintiff operated on a May 1 to April 30 fiscal year. The tax periods in issue in this appeal are fiscal years ending April 30, 1985, 1986, and 1987. Plaintiff filed timely federal income tax returns and New Jersey Corporation Business Tax (“CBT”) returns for these years. On January 17, 1989, plaintiff filed an amended federal return for the fiscal year ending (“FYE”) April 30, 1985. This return (Form 1120X) claimed a deduction for abandonment losses totaling $7,558,000 attributable to the termi *442 nation of operations of two of plaintiffs divisions. On the same date, plaintiff filed a Form 1120X with respect to FYE April 30, 1986, claiming an abandonment loss in the amount of $4,547,000 attributable to termination of a third division. On March 31,1989, plaintiff transmitted copies of these Forms 1120X to the Director.
The IRS audited plaintiffs tax returns for FYE April 30, 1985 (the audit also included the tax period ending April 30, 1984, which is not in issue in this appeal), and the Director audited plaintiffs CBT returns for FYE April 30, 1985 and FYE April 30, 1986. The Director completed his audit on July 21, 1989, and, among other changes, allowed the full amount of the abandonment losses claimed by plaintiff. The IRS completed its audit in July 1990. The results of the audit were incorporated in a revenue agent’s report (“RAR”) dated July 27, 1990. This report recommended a reallocation of basis among plaintiffs assets, resulting in depreciation and other adjustments which materially reduced plaintiffs tax liability. The RAR also recommended allowance of the full amount of the abandonment losses claimed by plaintiff for FYE April 30, 1985, and, because of the reallocation of basis, the aggregate amount of these losses increased from $7,558,000 to $12,707,621, a difference of $5,149,621.
On July 31, 1990, plaintiff consented to the contents of the July 27,1990 RAR. By letter dated and mailed on October 26,1990, the IRS advised plaintiff of the acceptance of plaintiffs federal income tax returns for the tax period ending April 30, 1984 and FYE April 30, 1985 with the changes noted in the July 27, 1990 RAR. Plaintiff received the IRS letter on October 31,1990.
As a result of the July 27, 1990 RAR, on July 30, 1990 plaintiff filed with the IRS a second Form 1120X for FYE April 30, 1986, and Forms 1120X with respect to FYE April 30, 1987 and FYE April 30, 1988. These forms incorporated the adjustments to plaintiffs income contained in the RAR, on the basis that the adjustments flowed through to the following years for which tax returns had already been filed. An IRS audit of these Forms 1120X resulted in another revenue agent’s report recommending approval, with some changes, of the adjustments for fiscal years *443 ending April 30, 1986, 1987, and 1988, and the IRS accepted the report on November 19,1992.
On January 23, 1991, plaintiff mailed to the Director, by certified mail, the following documents which the Director received on January 25, 1991:
1. CBT Form IRA-100 for the fiscal years ending April 30, 1984 and 1985, which reported the changes in taxable income contained in the July 27, 1990 RAR;
2. Worksheets reflecting plaintiffs calculation of its “corrected taxable income” for CBT purposes for fiscal years ending April 30, 1986 and 1987; and
3. Amended CBT tax returns (Form CBT-100) for fiscal years ending April 30, 1988 and 1989.
The documents relating to fiscal years ending April 30, 1986 through 1989 reflected changes (previously reported to the IRS on Forms 1120X) in plaintiffs CBT liability resulting from the adjustments contained in the July 27, 1990 RAR (which covered only the tax period ending April 30,1984 and FYE April 30,1985).
The documents reported the following overpayments and refunds due:
NJ Audit July 27, 1990 Form 1120X FYE Adjustments RAR Adjustments Total
1985 ($229,813) ($111,635) ($341,448)
1986 ($ 73,083) ($554,688) ($627,771)
1987 $ 88,686 ($112,797) ($ 24,111)
1988 ($671,742) ($671,742)
1989 ($ 99,962) ($ 99,962)
In 1992, the Director remitted the following amounts to plaintiff:
A. a refund of $881,695, consisting of $667,485 attributable to the Form 1120X adjustments for fiscal years ending- April 30, 1986 and 1987, plus $214,210 attributable to the CBT audit adjustments for fiscal years ending April 30, 1985,1986 and 1987; and
B. a refund in the amount of $99,962 based on the Form CBT-100 filed by plaintiff for FYE April 30, 1989.
By letter dated February 22, 1993, plaintiff filed with the Director a Form IRA-100 for fiscal years ending April 30, 1986, 1987, and 1988, with an analysis of the total refunds owed to it. These forms reflected additional CBT due of $2,606 for FYE April 30, 1986, a refund of $1,924 for FYE April 30, 1987, and additional CBT due of $216,116 for FYE April 30, 1988. By final determina *444 tion dated December 14, 1994, the Director off-set against the 1988 refund claim in the amount of $671,742, the additional CBT reported as due for fiscal years ending April 30, 1986 and 1988, plus interest of $469, and denied the net refund claim of $452,551.
Litigation relating to FYE April 30, 1988 was settled between the parties, but the settlement did not include fiscal years ending April 30, 1985,1986 or 1987. On December 20, 1996, the Director issued a Notice of Erroneous Refund stating that he had erroneously remitted refunds in the amounts of $881,695 for fiscal years ending April 30,1985 through 1987, and $99,962 for FYE April 30, 1989. By final determination dated October 7, 1998, the Director agreed that the refund of $99,962 for FYE 1989 was proper but upheld the erroneous nature of the refunds for fiscal years ending April 30,1985 through 1987. This appeal followed.
In addition to disputing the refund claims asserted by plaintiff, the Director seeks recovery of the 1985 through 1987 refunds paid by him totaling $881,695. With the consent of the parties, consideration of this latter issue has been deferred pending the court’s determination of plaintiffs entitlement to the refunds in dispute.

Applicable Law

After the years involved in this appeal, the New Jersey statutes and regulations applicable to the filing and timing of refund claims were amended, including enactment of the Taxpayers’ Bill of Rights. L. 1992, c. 175. The following discussion relates to the statutes and regulations in effect and applicable at the time plaintiffs claims for refunds arose and were asserted.
Under N.J.S.A. 54:10A-13, a provision of the CBT Act, N.J.S.A. 54:10A-1 to -40, a taxpayer had certain reporting obligations in the event the taxpayer’s income was changed by the IRS. The statute provided in pertinent part as follows:
If the amount of the taxable income for any year of any taxpayer as returned to the United States Treasury Department is changed or corrected by the Commissioner of Internal Revenue .., such taxpayer shall report such changed or corrected taxable income ... within 90 days after the final determination of such change or correction ... or as required by the [D]ireelor [of the New Jersey Division of *445 Taxation], and shall concede the accuracy of such determination or state wherein it is erroneous. ,
[N.J.S.A. 54:10A-13.]
If the change effected by the IRS occurred within two years after the date of filing of the corporation’s CBT return, and the change resulted in a decrease in the corporation’s tax liability, the corporation could file a claim for refund under N.J.S.A. 54:49-14, a provision of the State Tax Uniform Procedure Law, N.J.S.A. 54:48-1 to:50-28, which governed refund claims under the CBT Act. Prior to 1992, N.J.S.A. 54:49-14 permitted claims for refund “at any time within two years after the payment of any original or additional tax assessed against ... [the taxpayer], unless a shorter time is fixed by the law imposing the tax ....” Neither this statute nor any other statute permitted refund claims based on IRS changes in income which occurred after expiration of the two-year time limit contained in N.J.S.A. 54:49-14. In 1989, the Director addressed this issue and promulgated the following regulation which extended the time period for filing a refund claim relating to IRS changes.
[W]here a taxpayer files a Report of Changes in Corporate Taxable Net Income by the U S. Internal Revenue Service pursuant to N.J.A.C. 18:7-11.8(a) [which required the report of changes to be filed within 90 days after issuance of the IRS audit report] that results in a diminution of entire net income for any yew, the two-year limitation period for filing a claim for refund based on that diminution for the return year at issue begins on the date that the timely filed Form IRA-100 is filed with the Division fof Taxation] . Unless the IRA-100 is filed in timely fashion under N.J.A.C. 18:7-11 8(a), the refund claim will not be considered
[N.J.A C 18:7—13.8(d).] [1]
This regulation confirmed what had been the Director’s administrative practice and appears to have been prompted by the decision in Olin Mathieson Chem. Corp. v. Kingsley, 119 N.J.Super. 102, 290 A.2d 304 (App.Div.1972). In that case the Appellate Division sustained the validity of a regulation interpreting the relationship between N.J.S.A. 54:10A-19.1(b), as then in effect, and N.J.S.A. 54:10A-13. The former statute limited the time *446 period for an additional assessment by the Director to five years from the date of filing of the original return, unless no return was filed, in which event the tax could be assessed at any time. In interpreting the relationship between this statute and N.J.S.A. 54:10A-13, relating to reporting of changes in income made by the IRS, a regulation provided that an additional tax assessment could be imposed at any time within five years from the date of filing of a report of change under N.J.S.A. 54:10A-13. The court sustained the validity of this regulation and upheld an additional tax assessment imposed in 1967 for tax years 1959 and 1960 based on a report of IRS changes filed in 1967, and an assessment imposed in 1968 for tax year 1961 based on a report of changes filed in 1968. The court noted:
Where an agency charged, with administering an act has given it a certain construction, that construction must be accorded weight in ascertaining the statutory meaning, particularly where the interpretation is of some years’ standing and uniformity____Although the Legislature has since 1959 amended certain sections of the Corporation Business Tax Act, it has never amended subsection 13, thereby arguably agreeing with the Division’s interpretation of that section.
The decision below is consistent with the general principles that everyone should shoulder a just portion of the weight of taxation and that doubts about proper statutory construction should be resolved against those seeking to escape that equitable burden.
[Olin Mathieson Chem. Corp. v. Kingsley, supra, 119 N.J.Super. at 108, 290 A.2d 304 (citations omitted).]
It is within the context of the foregoing statutory and regulatory framework that this court must decide the three issues now before it, namely: 1) whether the changes in income which plaintiff reported to the Director were changes made by the IRS; 2) whether plaintiff timely filed its reports of IRS changes as required by N.J.S.A 54:10A-13; and 3) whether the Director validly imposed a requirement for timely filing of a report of changes as a condition to qualification for the two-year extension of the refund claim period set forth in N.J.A.C. 18:7-13.8(d).

What Changes In Plaintiff’s Income Were IRS Changes

The Director asserts that, even if plaintiff is deemed to have filed timely reports of changes, plaintiff does not qualify for the extension of the refund claim period contained in N.J.A.C. *447 18:7-13.8(d) because: 1) refund claims based on abandonment losses do not involve changes made by the IRS; and 2) refund claims for fiscal years ending April 30, 1986 and 1987, arising from the reallocation of basis in the July 27, 1990 RAR relating to FYE April 30, 1985, do not involve changes made by the IRS but merely a form of self-assessment by plaintiff for 1986 and 1987. Plaintiff responds that the abandonment losses for FYE April 30, 1985 were specifically allowed in the July 27, 1990 RAR, and, therefore, constitute IRS changes. Plaintiff also asserts that the RAR changes relating to reallocation of basis for FYE April 30, 1985 necessarily were applicable for future years, and this flow-through effect constituted IRS changes for the later years.
 I conclude that plaintiffs claims relating to abandonment losses for fiscal years ending April 30, 1985 and April 30, 1986, to the extent those losses were allowed in connection with an audit by the New Jersey Division of Taxation, are not refund claims based on IRS changes, even though the July 27, 1990 RAR discussed and allowed the abandonment losses for FYE April 30, 1985. Plaintiff contends that the RAR also discussed the FYE April 30, 1986 abandonment loss, but I find no such discussion, particularly on the pages of the RAR cited by plaintiff. Consequently, the refund claims based on these abandonment losses are barred by the two-year statute of limitations contained in N.J.S.A. 54:10A-14. However, the July 27, 1990 RAR increased the amount of the abandonment loss for FYE April 30, 1985 by $5,149,621 to $12,707,621. This increase was a change effected by the IRS under N.J.S.A. 54:10A-13 and would qualify for the extension of the refund claim period contained in N.J.A.C. 18:7-13.8(d).
With respect to plaintiffs refund claims for 1986 and 1987 based on the flow-through effects of the July 27, 1990 RAR, I reject the Director’s contention that no flow-through effect is cognizable under N.J.S.A. 54:10A-13. The statute provides that if the amount of income “for any year of any taxpayer as returned to the United States Treasury Department” is .changed by the IRS, then the taxpayer is obligated to report the change within ninety *448 days. The July 27, 1990 RAR did not directly change plaintiffs tax liability for 1986 and 1987, but the IRS changes relating to reallocation of basis for 1985 necessarily carried over to 1986,1987 and later years for which returns were filed before the IRS acceptance of the RAR on October 26,1990.
I construe N.J.S.A. 54:10A-13 to require the filing of a report of an IRS change for any year for which a tax return has previously been filed, where the change has an impact on the tax liability for that year. Accordingly, I conclude that a flow-thi’ough effect is applicable and that, by filing timely reports of change for 1986 and 1987, plaintiff would qualify for the two-year extended refund claim period provided by N.J.A.C. 18:7—13.8(d) as to its refund claims for those years based on the IRS changes contained in the July 27, 1990 RAR.

Did Plaintiff File Timely Reports of IRS Changes

I turn now to the issue of whether plaintiff complied with the time for filing requirement of N.J.S.A. 54:10A-13. The facts relating to this issue are straightforward. The parties agree that the date of the “final determination” (as this phrase is used in N.J.S.A. 54:10A-13) of the change in plaintiffs income for tax year 1985 was October 26, 1990, the date of the letter from the IRS confirming acceptance of the July 27, 1990 RAR. See Sharps, Pixley, Inc. v. Director, Div. of Taxation, 16 N.J.Tax 626, 636-39 (Tax 1997) (holding that the date of a letter from the IRS accepting a revenue agent’s report was the date of final determination under N.J.S.A. 54:10A-13). Plaintiff did not receive the letter until October 31, 1990. On January 23, 1991 plaintiff mailed to the Director, by certified mail, a report of changes on Form IRA-100 relating to FYE April 30, 1985, and worksheets reflecting the impact of the 1985 IRS changes on plaintiffs CBT liability for fiscal years ending April 30, 1986 and 1987.[2] The Director received these documents on January 25, 1991. Ninety days from October 26, 1990, the time period imposed by N.J.S.A. 54:10A-13 *449 for filing a report of changes, expired on January 24, 1991. The parties agree that, under the then applicable law, filing occurred upon receipt by the Director.[3]
Plaintiff contends that the expiration date of the ninety-day period should be calculated from the date of plaintiffs receipt of the final determination from the IRS, because to calculate the expiration date from the date of the letter (which plaintiff stipulates was mailed on October 26, 1990) would deprive the taxpayer of the benefit of the full time period provided by statute. Plaintiff further contends that considerations of equity should cause this court to deem the filing timely because plaintiff mailed the reports of changes within the ninety-day period, the Director received the reports only one day after the expiration of the ninety-day period, and no prejudice resulted from the one day delay in filing.
As set forth above, N.J.S.A. 54:10A-13 requires that a report of changes be filed with the Director “within 90 days after the final determination of such change.” Similar language has been interpreted in other contexts as meaning that the applicable time period begins on the date of the determination, not on the date of receipt of notice of the determination. In City of Passaic v. Division of Tax Appeals, 54 N.J.Super. 215, 148 A.2d 630 (App. Div.), certif. denied, 29 N.J. 583, 150 A.2d 807 (1959), the court dealt with a statute which provided that an action or determination of a county board of taxation could be appealed to the then Division of Tax Appeals under rules prescribed by the Division. The Division promulgated a rule which required appeals to it from county tax boards to be filed within thirty days of the action or determination appealed from. The plaintiff, City of Passaic, sought to file an appeal challenging the table of aggregates (abstract of ratables) issued by the Passaic County Board of Taxation on April 10, 1958. The Division refused to accept the appeal for filing on grounds that it was untimely. Passaic contended that no copy of the document was forwarded to the City *450 Clerk’s office until May 19, 1958, that the City attorney had no actual knowledge of the adoption of the table until May 20, 1968, and that either of those dates should mark the commencement of the thirty-day appeal period. The Appellate Division rejected the City’s contention, noting that the Division of Tax Appeals’ rule explicitly required appeal within thirty days after the county board’s action or determination. The court stated that, even if the rule were capable of interpretation, the court would interpret it in light of the “legislative policy that proceedings involving assessments of taxes and governmental fiscal matters be brought promptly within the specified periods of time.” Id. at 218, 148 A.2d 630 (citations omitted).
Similar policy considerations relating to the calculation of the time period for appeal in tax matters were integral to the decision in Harris Corp. v. Director, Div. of Taxation, 15 N.J.Tax 119 (Tax 1995). There, Judge Hamill held that the time period for filing a Tax Court complaint for refund of CBT runs from the date the Division of Taxation mails a notice to the taxpayer and not from the date of actual receipt of the notice by the taxpayer.
It seems highly unlikely that the drafters of R. 8:4-2(a) intended that the 90-day appeal period for state tax' matters should commence to run only when a taxpayer receives a determination letter from the Director because the date of receipt would be unknown to the Director and susceptible to manipulation.
[15 N.J.Tax at 123.]
In interpreting N.J.S.A. 54:10A-13 with respect to the meaning of the phrase the “final determination of such change,” the court must balance the importance of certainty .in the computation of the ninety-day period set forth in the statute with the importance of providing a taxpayer the benefit of the full ninety-day period. Time limits in tax matters are strictly enforced, particularly with respect to refund claims. H.B. Acquisitions, Inc. v. Director, Div. of Taxation, 12 N.J.Tax 60, 65 (Tax 1991) (citations omitted). See F.M.C. Stores Co. v. Morris Plains Bor., 100 N.J. 418, 424, 495 A.2d 1313 (1985) (citations omitted) (holding, in the context of a local property tax appeal, that “[s]trict adherence to statutory time limitations is essential in tax matters”). If plaintiffs argument were accepted, and the ninety-day time period set forth in N.J.S.A. 54:10A-13 commenced on the date of plain *451 tiffs receipt of the October 26, 1990 final determination letter from the IRS, then, as Judge Hamill commented, the taxpayer would have within its control the calculation of the time period and would have the concomitant ability to manipulate that period. The IRS is not required by statute or regulation to send its final determination letter by certified or registered mail. Accordingly, evidence of the date of receipt of the letter would necessarily be limited to the testimony of the taxpayer. I conclude, therefore, that the ninety-day period set forth in N.J.S.A. 54:10A-13 commenced in this matter on October 26, 1990 and expired on January 24, 1991. Plaintiffs reports of changes (including those for 1986 and 1987 which were based on the same July 27, 1990 RAR approved by the IRS on October 26, 1990 as the 1985 report of changes) were filed one day late.
The facts before me do not involve a protracted delay between the date of mailing and receipt of the IRS letter. Plaintiff received the October 26, 1990 letter on October 31, 1990. Therefore, plaintiff had eighty-five days from the date of receipt within which to file its report of change with the Director. Form IRA-100, on which the IRS changes are to be reported, consists of one page which requires information as to original income reported, the increase or decrease resulting from the IRS adjustments, and the federal net income as redetermined. Completion of the form is neither difficult nor unduly time-consuming. Here, plaintiffs reports were completed and ready for mailing, and, in fact, mailed by regular certified mail on January 23, 1991, the day before the expiration of the remaining eighty-five days of the full ninety-day period. Plaintiff could have delivered its reports by hand or by overnight delivery service. Plaintiff decided not to use either of these methods and must bear the consequences of that decision. See Prospect Hill Apts. v. Flemington Bor., 172 N.J.Super. 245, 1 N.J.Tax 224, 411 A.2d 737 (Tax 1979) (dismissing a local property tax complaint as untimely where the complaint was mailed one day before the filing deadline and received one day after the deadline); Mayfair Holding Corp. v. North Bergen Tp., 4 N.J.Tax 38 (Tax 1982) (dismissing a property tax appeal on the grounds that the initial filing of the appeal with the county board of taxation was *452 untimely where the county board petition of appeal was postmarked on the appeal deadline but not received until the next day).
Plaintiff asserts that, even if, as a matter of law, its report of changes was late, the court should exercise its equitable jurisdiction and treat plaintiffs reports of changes as timely because the reports were only one day late and no prejudice to defendant resulted. In support of this contention, plaintiff cites H.B. Acquisitions v. Director, Div. of Taxation, supra, 12 N.J.Tax 60, in which the Tax Court recognized the possibility that equitable considerations might apply to excuse a taxpayer from complying with a statute of limitations under appropriate circumstances. Id. at 69. In refusing to exercise any equitable jurisdiction in that case, the court noted that “ ‘[p]ublic policy discourages suits for the refund of taxes erroneously paid or illegally collected’ ” and that it is a “ ‘well-established principle that statutes of limitation applicable to suits against the government are conditions attached to the sovereign’s consent to be sued and must be strictly construed.’ ” Id. at 65 (citations omitted). In specific response to the contention concerning equity, the court stated that “[wjhile one may appreciate the effort required of taxpayer to appraise assets and to determine actual tax liability, this task does not excuse taxpayer from complying with the statutory limitations period. Equity demands more than good faith; it demands diligence in the protection of one’s own interest.” Id. at 69.
A similar view appears in Keezer v. State, Div. of Taxation, 9 N.J.Tax 264 (Tax 1987). The plaintiff purchased an automobile in 1983. In 1986, the vehicle was impounded by the New Jersey State Police as a stolen vehicle, and the plaintiff sought a refund of the sales tax she had paid in connection with the purchase. She argued that the court should exercise its equitable powers and set aside the application of the two-year statute of limitations applicable to sales tax refund claims because she could not have known that the vehicle was stolen until the State Police impounded it. 9 N.J.Tax at 267. The Tax Court refused to exercise any equitable powers, and commented as follows:
*453 [G liven the control of the legislative branch over taxation, judicial engrafting of a “discovery rule” on refund statutes of limitations is not proper. All taxation being strictly a creature oí' statute, enforcing the collection of all taxes involves an area of special legislative concern, and deference ought to be paid by this court to the legislative expression of public policy limiting the time within which refunds of state taxes may be sought.
[Id. at 279 (citations omitted).]
Here, as noted above, plaintiff completed its reports of changes in a timely fashion, and had the opportunity to file them with the Director within the applicable ninety-day period. Plaintiff failed to do so only because it elected to use regular certified mail instead of hand or overnight delivery. Plaintiffs actions reflect far less than the diligence that might provide a basis for equitable relief in otherwise appropriate circumstances.

Is the Timely Filing Requirement A Valid Condition to Extension of the Refund Claim Period

Having determined that plaintiffs reports of changes were not timely filed, I must now address the issue of whether such lack of timely filing bars plaintiff from prosecuting its refund claims. This issue was considered by Judge Small in Sharps, Pixley, Inc. v. Director, Div. of Taxation, supra, 16 N.J.Tax at 639-45. I concur with Judge Small’s thorough and detailed analysis of the policy considerations relating to the Director’s limiting the extension of the two-year refund claim period provided in N.J.A.C. 18:7-13.8(d) to those taxpayers who file timely reports of IRS changes as required by N.J.S.A. 54:10A-13. I concur with Judge Small’s conclusion that this limitation is a valid provision of the regulation. In his analysis, Judge Small addressed arguments which have been asserted by plaintiff here, namely the impact of Stelnik v. Director, Div. of Taxation, 13 N.J.Tax 141 (Tax 1993), and the impact of the failure of the Legislature to change the Director’s regulation notwithstanding amendments to N.J.S.A. 54:10A-13. I agree with his analysis as to those arguments and will not reiterate it. I add the following comments.
In the regulation in question, the Director has merely required compliance with an express statutory provision as a part of interpreting the statute to extend the time period for refund *454 claims based on IRS changes. Such a requirement is inherently reasonable. See J.L. Muscarelle, Inc. v. Saddle Brook Tp., 14 N.J.Tax 453, 474 (Tax 1995) (Hamill, J.T.C., concurring) (citations omitted) (stating that “[t]he Due Process Clause does not prohibit a state from conditioning the opportunity for a hearing based on ‘reasonable procedural requirements’ such as statutes of limitation”). In Sharps, Pixley, Inc., supra, Judge Small found that the Director provided an explanation for requiring timely filing of a report of changes, and that the explanation constituted a reasonable basis for N.J.A.C. 18:7-13.8(d). In the matter before me, the Director advanced additional reasons for the timely filing requirement in the regulation, predicated on the general occurrence that a report of IRS changes is filed long after the two-year refund claim period provided in N.J.S.A. 54:49-14 has expired. These reasons included the following: 1) timely filing of a report of IRS changes enables the Director to provide early notice to the State Treasurer as to the impact on state revenues of a potential refund claim, 2) timely filing enables the Director, as an administrative matter, to have sufficient personnel available to deal with disputed IRS changes, and 3) timely filing alerts the Director to retain records that might otherwise be destroyed as a result of them age.[4] These reasons reinforce the inherent reasonableness of the timely filing requirement in N.J.A.C. 18:7-13.8(d).
Plaintiff has failed to carry its burden of demonstrating that there is no conceivable state of facts which would support the timely filing provisions of the regulation and, therefore, consistent *455 with Sharps, Pixley, Inc., supra, I hold that the regulation is valid. Consequently, plaintiffs failure to file timely reports of IRS changes is fatal to its refund claims. The claims were filed long after expiration of the refund claim period set forth in N.J.S.A. 54:49-14, and plaintiff was not entitled to the two-year extension of the claim period provided by N.J.A.C. 18:7-13.8(d).
The preceding analysis renders unnecessary consideration of other contentions by the parties. For the reasons set forth in that analysis, plaintiffs claims for refunds are dismissed. This dismissal will be incorporated in the judgment to be issued upon determination of the Director’s claim for recovery of refunds previously paid.

 An amendment to N J S.A. 54:10A-13, enacted on December 10, 1992 as part of the Taxpayers' Bill of Rights, extended the refund claim period from the date a corporation’s "taxable income is finally changed or corrected" by the IRS. L. 1992, c 175, § 19.

 N.J.S A 54:49-3.1, enacted December 10, 1992, as part of the Taxpayers’ Bill of Rights, changed the date of filing from the date of receipt by the Director to the date of mailing. L. 1992, c 175 § 44.

 For purposes of this opinion, I assume that the "worksheets” satisfied the statutory requirement for a "report.”

 Plaintiff requested the right to conduct discovery concerning what specific actions, if any, the Director had taken with respect to his reasons for the regulation and concerning any actual experience the Director had with respect to any of the reasons. I denied the discovery. The Director's regulation is entitled to a presumption of reasonableness and validity, and if any state of facts reasonably can be conceived that would sustain the regulation, the court must presume the existence of that state of facts. Consolidation Coal Co. v. Kandle, 105 N.J.Super. 104, 114, 251 A.2d 295 (App.Div.), aff'd o.b., 54 N.J. 11, 252 A.2d 403 (1969). Because of this presumption and because the'Director is not required to make factual findings in connection with the adoption of a regulation, New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 560-61, 384 A.2d 795 (1978), I concluded that factual inquiry into the experience or actions of the Director with respect to the regulation was inappropriate.