DeALMEIDA, J.T.C.
At issue is whether the Director, Division of Taxation, properly denied as untimely plaintiffs request for a refund of estate tax. For the reasons explained more fully below, the court concludes that plaintiff failed to present its refund request within the statutorily defined period for doing so. The Director’s final determination, therefore, must be upheld.
I. Findinga of Fact
The facts are not in dispute. Frank J. Ehringer died a resident of Mountain Lakes, New Jersey on May 21, 2003. He was survived by twin sons, Bruce Ehringer and Drew Ehringer. Shortly before his death, Prank J. Ehringer executed a Final Codicil that favored Drew and granted him certain rights that Frank J. Ehringer had previously stated in a draft Codicil would be bestowed on Bruce. This change in Frank J. Ehringer’s Will sparked litigation among the beneficiaries. On July 23, 2003, two months after Frank J. Ehringer’s death, an action was filed in the Superior Court, Chancery Division, to probate the Will and Final Codicil. Bruce filed an Answer contesting the Final Codicil.
On February 23, 2004, while the Chancery Division action was pending, plaintiff, the estate of Frank J. Ehringer, filed with the Director an application for a four month-extension of time in which to file its New Jersey estate tax return. No reason was given for the extension request. The application noted that estate tax returns “are due 9 months following the death of the decedent.” Thus, the estate tax return for Frank J. Ehringer’s estate was due on February 23, 2004, the day that the extension request was made. Because an extension of time to file an estate tax return does not extend the time to pay the tax, N.J.A.C. 18:26-3A.10(d), the estate enclosed an estimated payment of $128,000 with its extension request.
The Director approved the estate’s request for an extension and established a June 21, 2004 deadline for the filing of plaintiffs estate tax return.
On December 2, 2004, almost six months after the June 21, 2004 extended filing deadline, a representative of the estate submitted a *606 letter to the Division. The letter indicated that it is “a follow up to today’s telephone conversation and our letter of October 18, 2004____” The October 18, 2004 letter is not in the record. The December 2, 2004 correspondence requested that the Division “be advised that a return cannot be filed for the above-mentioned estate due to the fact that there is on going litigation between the beneficiaries.” This constitutes the first written notice to the Director of the pending Chancery Division action. The letter provided that “[o]nee the parties come to an agreement, the required returns will be filed as quickly as possible.” Handwritten notations on the December 2, 2004 letter, apparently from a Division employee, indicate “Noted 12/10/04” and “ask for status if return not filed by 2/28/05.”
On July 26, 2005, a representative of the estate responded in writing to an inquiry from the Division. The representative reported that “due to the pending litigation between the beneficiaries, it is impossible at this time to prepare an accurate tax return” for the estate. The letter continued, “[i]t is our understanding that a tentative court date has been set in October of this year. Once a settlement has been reached, the required filings will be prepared. Please note that we anticipate an overpayment once these returns are filed.” A handwritten notation, apparently from a Division employee, indicates “8/3/05 Noted.”
On November 28, 2005, a representative of the estate responded to a written inquiry from the Division. The November 28, 2005 letter reported that “we were instructed by council (sic) that a return can now be prepared. We are anticipating starting this return sometime this week and hope to have the return completed by year end. If any problems develop, we will notify you as soon as possible.” A handwritten notation, apparently from a Division employee, indicates “12/1/05 Noted.”
On February 9, 2006, the estate filed a New Jersey estate tax return. The return reports an estate tax liability of $93,595. Because the estate previously made a payment of $128,000, the return requests a refund of $34,405. The return includes numerous deductions for expenses incurred in the administration of the *607 estate, including itemized litigation expenses associated with the Chancery Division action. The February 9, 2006 return does not indicate that the Chancery Division matter was not fully resolved, does not request a further extension for reporting additional expenses related to that litigation, and does not indicate that the estate’s federal tax liability had not been finally determined.
On July 17, 2006, the Division issued a notice of overpayment awarding to the estate $32,419.66 of the $34,405 refund requested in the February 9, 2006 return. The amount refunded was less than requested by the estate because various deductions associated with executor commissions were disallowed by the Division pursuant to N.J.A.C. 18:26-7.10(c) and (d). The estate filed no protest with respect to the July 17, 2006 notice.
On December 31, 2007, more than twenty-two months after the filing of the February 9, 2006 return and over three years after the estate’s payment of $128,000 in estate tax, a representative of the estate submitted a letter to the Division. The letter informed the Division that the “estate was recently audited by the Internal Revenue Service” and that as a result of the audit an additional $414,179 in expenses associated with the Chancery Division litigation were allowed by federal taxing authorities.
The December 31, 2007 letter omitted the fact that although the estate filed its estate tax return on February 9, 2006, the Chancery Division action was not resolved at that time. In fact, the trial in that matter began on February 14, 2006, shortly after the estate filed its return. The record contains no explanation of why the estate decided to file its estate tax return just as the Chancery Division action was about to proceed, rather than seeking further extensions of the filing deadline, as had been routinely granted by the Division. Nor is there evidence in the record explaining why the estate did not, when the original return was filed, inform the Director that the Chancery Division action was ongoing and that the estate intended to deduct on its federal return further expenses attributable to that action.
The Chancery Division opinion with respect to the beneficiaries’ suit was issued in September 2006. A fee application was filed in *608 January 2007 and decided before February 1, 2007, when an appeal and cross-appeal regarding the fee award were filed. Thus, by February 23, 2007, within three years from the estate’s payment of $128,000 in estate tax, representatives of the estate were aware of the fee award entered by the trial court and the costs incurred at trial and could have made an intelligent estimate of the amount of expenses the estate would seek to deduct for federal tax purposes. An IRS audit of the estate’s federal return commenced in August 2007 and was completed in November 2007.
An amended New Jersey estate tax return was included with the December 31, 2007 letter. The amended return, which was marked filed by the Division on January 6, 2008, reflected a deduction for the additional expenses associated with the Chancery Division action permitted by the IRS and requested a total refund of $61,759 in estate tax. Because the Director had already awarded a refund of $32,419.66, the estate sought an additional refund of $29,339.34.
On January 16, 2008, the Division issued a Notice of Assessment indicating that the estate would not be awarded an additional refund. The notice explained that “[p]ursuant to the provisions of R.S. 54:38-3 and N. J.A.C. 18:26-3.9(a), the overpayment of tax will not be refunded since the application for refund was made more than three years from the date that the tax was paid.”
An administrative appeal followed. A February 25, 2008 letter submitted on behalf of the estate noted for the first time since the filing of the February 9, 2006 tax return that the Chancery Division litigation was not complete when that return was filed. The February 25, 2008 letter provided that the request for an additional refund “was as a result of additional litigation costs that were incurred subsequent to the date of filing of the tax return and could not be reasonably estimated when the return was filed.” The letter explained that “[t]his was due to the prolonged litigation that resulted mainly due to the death of one of the named beneficiaries, who was also a co-executor, during the administration of the estate and the resulting complications that arose due to this death.” The letter concluded: “[t]he executor is of the *609 position that it would only be equitable to allow such refund now since he did not want to put himself in a position of filing an incorrect tax return in 2006 by overstating such expenses.”
On May 7, 2008, the Director issued a final determination rejecting plaintiffs refund request as untimely. The Director upheld the January 16, 2008 determination that plaintiffs request for an additional refund was late because it was made more than three years after the $128,000 payment of estate tax. However, the Director decided that “in view of the fact the estate requested a refund of $34,405.00 within the statutory time frame and received a refund of only $32,419.66, the estate would still be entitled to an additional refund for the difference of $1,985.34.”
A timely appeal to this court followed. After discovery, the parties cross-moved for summary judgment. The court heard oral argument from counsel on January 9, 2009. Supplemental materials were filed after argument. This opinion sets forth the court’s findings of fact and conclusions of law on the cross-motions. R. 1:6—2(f).
II. Conclusions of Law
“Summary judgment should be granted where ‘the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the [moving] party is entitled to a judgment or order as a matter of law.’ ” Alpha I, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 53, 56 (Tax 2000) (citing R. 4:46-2). In Brill v. Guardian Life Ins. Co., 142 N.J. 520, 523, 666 A.2d 146 (1995), our Supreme Court established the standard for summary judgment as follows:
[W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party.
The court concludes that this matter is ripe for decision by summary judgment. There are no material facts in dispute.
*610 With respect to the substantive issues raised by the parties, the court’s analysis is influenced by the familiar principle that the Director’s interpretation of tax statutes is entitled to a presumption of validity. “Courts have recognized the Director's expertise in the highly specialized and technical area of taxation.” Aetna Burglar & Fire Alarm Co. v. Director, Div. of Taxation, 16 N.J.Tax 584, 589 (Tax 1997) (citing Metromedia, Inc. v. Director, Div. of Taxation, 97 N.J. 313, 327, 478 A.2d 742 (1984)). The scope of judicial review of the Director’s decision with respect to the imposition of a tax “is limited.” Quest Diagnostics, Inc. v. Director, Div. of Taxation, 387 N.J.Super. 104, 109, 903 A.2d 442 (App.Div.), certif. denied, 188 N.J. 577, 911 A.2d 69 (2006). The Supreme Court has directed the courts to accord “great respect” to the Director’s application of tax statutes, “so long as it is not plainly unreasonable.” Metromedia, supra, 97 N.J. at 327, 478 A.2d 742 (citations omitted). See also GE Solid State, Inc. v. Director, Div. of Taxation, 132 N.J. 298, 306, 625 A2d 468 (1993) (“Generally, courts accord substantial deference to the interpretation an agency gives to a statute that the agency is charged with enforcing.”) (citations omitted).
In addition, as a general rule “[statutes of limitations in tax statutes are strictly construed in order to provide finality and predictability of revenue to state and local government.” Bonanno v. Director, Div. of Taxation, 12 N.J.Tax 552, 556 (Tax 1992) (citing Pantasote, Inc. v. Director, Div. of Taxation, 8 N.J.Tax 160, 164-66 (Tax 1985)). Strict application of limitations periods applies “to the filing of claims for tax refunds____” M.J. Ocean, Inc. v. Director, Div. of Taxation, 23 N.J.Tax 646, 651 (Tax 2008), aff'd, 2009 WL 62943, 2009 N.J.Tax LEXIS 2 (App.Div. Jan. 12, 2009). As Judge Lasser explained,
[p]ublic policy discourages suits for the refund of taxes erroneously paid or illegally collected. It is a well established principle that statutes of limitations applicable to suits against the government are conditions attached to the sovereign’s consent to be sued and must be strictly construed.
[H.B. Acquisitions, Inc. v. Director, Div. of Taxation, 12 N.J.Tax 60, 65 (Tax 1991) (citations and quotations omitted).]
“Refund moneys are available to be claimed by a taxpayer ... according to well-defined procedures. An otherwise eligible tax *611 payer ... who does not comply with the established procedures waives his entitlement to any refund.” Commercial Refrigeration & Fixture Co. v. Director, Div. of Taxation, 184 N.J.Super. 387, 2 N.J.Tax 415, 419, 446 A.2d 210 (Tax 1981). After the statutory period “for the filing of a refund application has passed, the State is entitled to assume that its tax revenues need not be refunded under any circumstances.” Ibid. “[E]ven though courts may have indicated that, under certain circumstances, statutes of limitation can and should be relaxed, those rulings do not apply to tax matters where such relaxation is unavailable except in the most extraordinary circumstances.” M.J Ocean, supra, 23 N.J.Tax. at 652-53. Thus, filing a refund claim just one day late, even when the claim was mailed to the Director several days prior to the filing deadline, justifies its rejection as untimely. Lenox, Inc. v. Director, Div. of Taxation, 19 N.J.Tax 437 (Tax 2001).
New Jersey imposes an “estate or transfer” tax “[ujpon the transfer of the estate of every resident decedent dying after December 31, 2001 which would have been subject to an estate tax payable to the United States” under the Internal Revenue Code “in effect on December 31, 2001.” N.J.S.A. 54:38-la(2). The amount of the tax is dependent on the state tax credit available to the estate under the Internal Revenue Code on December 31, 2001. See Oberhand v. Director, Div. of Taxation, 193 N.J. 558, 562, 940 A.2d 1202 (2008). Although the interaction between federal and New Jersey estate taxes is complex, the court need not delve far into the subject to decide the issues raised here. It will suffice for purposes of this opinion to recognize the simple proposition that the federal government’s allowance of a deduction for additional expenses related to the beneficiaries’ litigation had the effect of reducing plaintiffs New Jersey estate tax liability. The Director does not dispute that plaintiffs request for an additional refund, if timely made, would have been valid. The Director’s decision turns solely on the timing of the request.
The New Jersey estate tax “shall become due at the date of death of the decedent____” N.J.S.A. 54:38-5. An estate tax return and other information must be filed by the “executor, administrator, trustee or other person or corporation liable for the *612 payment of the estate tax....” N.J.A.C. 18:26-3A.8(a). The estate tax return “must be filed within nine months following the death of decedent.” N.J.A.C. 18:26-3A.10(d). The Director may grant a six-month extension of the filing deadline on any basis and a further extension “only in eases where the Director determines that exceptional circumstances exist.” Ibid. Such extensions apply only to the filing of the estate tax return and not to the payment of the tax, which is due nine months after the decedent’s death. Ibid.
Upon plaintiffs request, the Director granted several extensions of the time in which to file an estate tax return. Plaintiffs first request for an extension was submitted on February 23, 2004, the day that the estate tax return was due. It was on that date that plaintiff made an estimated estate tax payment of $128,000. The Director granted a four-month extension in response to the February 23, 2004 request. A second extension request was submitted on December 2, 2004, almost six months after the extended filing deadline. This request mentioned the Chancery Division action for the first time. The Director acquiesced in the estate’s request. More than seven months later, on July 26, 2005, the estate notified the Division that the pending litigation prevented the filing of an estate tax return. Again, the Director granted plaintiffs extension request.
On November 28, 2005, five months later, the estate informed the Division that it was instructed by counsel that an estate tax return could be prepared and filed. The return was filed on February 9, 2006, two years after the return was originally due and two years after the estate’s estimated payment of $128,000 in tax. The February 9, 2006 return requested a refund of $34,405. The Director granted that request, although the amount was adjusted to $32,419.66 to reflect the disallowance of certain deductions. The February 9, 2006 return included deductions for expenses related to the Chancery Division action, but made no mention that that proceeding remained pending and requested no additional time to provide information regarding future expenses associated with the suit. It was entirely reasonable for the *613 Division to conclude at that point that plaintiffs estate tax liability had been fully resolved and satisfied.
It was not until December 31, 2007, almost two years after the filing of the February 9, 2006 return, and more than three years after the estate made its estimated payment of $128,000, that the estate sought an additional refund of estate tax. The request was the result of the federal government’s allowance of a deduction for expenses incurred in the Chancery Division action after the filing of the estate’s February 9, 2006 estate tax return.
The circumstances presented by this case are addressed in N.J.S.A. 54:38-3. That statute provides:
If, subsequent to the determination of the tax due under this chapter, the amount of the Federal estate tax shall be decreased and the amount of the Federal credit correspondingly reduced by reason of any corrected assessment or redetermination, the tax due hereunder shall be reduced accordingly upon satisfactory proof submitted to the [Director, Division of Taxation], and, if the tax due hereunder shall have theretofore been paid into the State treasury, the Comptroller of the Treasury, on satisfactory prooí' of such fact submitted to the [Director, Division of Taxation], and duly certified by him to the Comptroller, shall draw his warrant on the State Treasurer in favor of the executor ... who has paid said tax . . for the amount of such tax excessively paid and said warrant shall be paid by the State Treasurer out of any appropriation for the refund of transfer inheritance taxes.
All applications for the refund of taxes claimed to have been excessively or erroneously paid hereunder must be filed with the [Director, Division of Taxation,] within three years from the date oí' payment.
[N.J.S.A. 54:3&-3J
The statute plainly establishes a three-year period in which an estate may seek a refund of estate tax excessively or erroneously paid to the Director. The three-year period begins to run with the payment of the tax. In this case it is not disputed that plaintiff paid $128,000 of estate tax on February 23, 2004, nine months after decedent’s death. Three years after the payment, or February 23, 2007, was the final date on which plaintiff could submit a timely request for a refund of those taxes. Plaintiff failed to meet this deadline.
Plaintiffs contention that it could not determine with certainty the amount of the expenses that would be permitted as a deduction by the IRS, and therefore its final New Jersey estate tax liability, until final resolution of the Chancery Division action *614 and federal audit is unavailing. “Refund claims are frequently filed dependent on future events such as the result of future federal audits or the results of litigation.” Forbes v. Director, Div. of Taxation, 14 N.J.Tax 257, 264 (Tax 1994) (footnote omitted). “Protective claims are filed with the intention to toll the statute of limitations ‘when either the law or the facts [of the case] are still in flux.’” Kristy M. Bowden, Comment, Protective Claims for Ref und: Protecting the Interests of Taxpayers and the IRS, 56 Me. L.Rev. 149, 153 (2004) (quoting Burgess J.W. Raby & William L. Raby, Perfecting Imperfect Refund Claims, 85 Tax Notes 1173, 1174 (1999)). “If the amount of tax deemed to be overpaid is uncertain, or if the refund itself is contingent, filing a protective claim is appropriate.” Ibid, (citing Michael I. Saltzman, IRS Practice and Procedure, 1111.08(3) (2002)). A protective refund claim puts the Director on notice within the statutory refund claim period that likely future events will entitle the taxpayer to a refund in an amount that can be determined with certainty only after expiration of the limitations period. A timely protective refund claim preserves the taxpayer’s rights and puts the State on notice during the statutorily defined claim window that its collection of revenue is subject to potential refund.
“There are numerous examples of protective refund claims in New Jersey.” Forbes, supra, 14 N.J.Tax at 265. See International Thomson Business Information, Inc. v. Director, Div. of Taxation, 14 N.J.Tax 424, 427 (Tax 1995) (taxpayer filed protective refund claim in event taxpayer found not to be an investment company); Futurevision Cable Enters, v. Director, Div. of Taxation, 6 N.J.Tax 149, 155-56 (Tax 1983) (taxpayer filed protective refund claim for sales and use and business personal property taxes imposed on cable equipment and installation services); Tuition Plan of New Hampshire v. Director, Div. of Taxation, 4 N.J.Tax 470, 483-84 (Tax 1982) (multiple-taxation claim rejected because taxpayer failed to file protective refund claim in other state based on potential apportionment of taxpayer’s New Jersey source income); CIT Fin. Servs. Consumer Disc. Co. v. Director, Div. of Taxation, 4 N.J.Tax 568, 579 (Tax 1982) (same). In each of these eases this court recognized that a timely protective refund *615 claim, based on eventualities that might take place after the limitations period expired, preserves the taxpayer’s rights should a refund ultimately be found to be warranted.
This proposition is true in the estate tax context. An estate may pay “the New Jersey estate tax based on the federal credit at the time of payment as required under the statute and fil[ej a protective refund claim” within the three-year statutory period “to adjust for subsequent reductions in the federal credit”. Forbes, supra, 14 N.J.Tax at 265. Plaintiff did not take advantage of its opportunity to file a timely protective refund claim.
The record establishes that prior to February 23, 2007, the expiration of the time in which plaintiff could have filed a timely refund claim, the Chancery Division action had concluded. In addition, the Chancery Division had entered an order awarding attorneys’ fees. Although the parties to the Chancery Division action had filed an appeal and cross-appeal from that order by February 1, 2007, plaintiff had more than sufficient information upon which to assert a claim that its New Jersey tax liability would likely be reduced because of a deduction for expenses incurred in the litigation after the filing of the estate tax return. An exact calculation of the deduction amount would not have been necessary to preserve plaintiffs protective refund claim. See Forbes, supra, 14 N.J.Tax at 264-65. The Chancery Division expenses and the trial court’s order awarding fees are precisely the type of “results of litigation,” Forbes, supra, 14 N.J.Tax at 264, having the potential to change an estate’s state tax liability after a limitations period that are ripe for inclusion in protective refund claim. Having failed to take action to preserve its potential claim during the statutory limitations period, plaintiff effectively waived its right to a refund.
Plaintiff’s characterization of the holding in Forbes, supra, as standing for the proposition that the court “recognized the possibility of ‘protracted litigation’ as a basis to extend an otherwise express and rigidly interpreted statu[t]e of limitations,” (Prb at 2), is incorrect. Judge Lasser refers to protracted litigation in Forbes, supra, as an example of a situation that warrants the filing *616 of a timely protective refund claim, not as a reason to extend the three-year statute of limitations. The court noted that “[r]efund claims are frequently filed dependent on future events such as the result of future federal audits or the results of litigation.” Forbes, supra, 14 N.J.Tax at 264. In a footnote immediately following this quote the court explained that “[tjhere are other reasons why the federal credit may be reduced at a time beyond the three-year refund statute. For instance, protracted litigation may result in a reduction in federal estate tax ... more than three years after payment of the New Jersey estate tax.” Id. at 264 n. 1. The reference to protracted litigation in Forbes serves not as basis for extension of the three-year period, but as an instruction to taxpayers and the Director that ongoing litigation, and its potential for reducing New Jersey estate tax liability, is a proper basis upon which to file a protective refund claim during the three-year statutory period.
Plaintiffs request for equitable relief, apparently through tolling of the statute of limitations or an extension of the deadline, does not find support in the law. In M.J. Ocean, supra, Judge Kuskin succinctly explained the reason that equitable relief is not available in the context of a stale claim for a tax refund:
In John R. Sand & Gravel Co. v. U.S., 552 U.S. 130, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008), the Supreme Court distinguished between statutes of limitation that “seek primarily to protect defendants against stale or unduly delayed claims” and those that seek “to achieve a broader system-related goal, such as ... limiting the scope of a governmental waiver of sovereign immunity....
[23 N.J.Tax at 652.]
The John R. Sand & Gravel Court held that it
has often read the time limits of these [latter] statutes as more absolute, say as requiring a court to decide a timeliness question despite a waiver, or as forbidding a court to consider whether certain equitable considerations warrant extending a limitations period. As convenient shorthand, the Court has sometimes referred to the time limits in such statutes as “jurisdictional.”
[552 U.S. at-, 128 S.Ct. at 753, 169 L.Ed.2d at 595 (citations omitted).]
N.J.S.A. 54:88-3 constitutes a waiver of governmental immunity as to a refund claim. It is thus “not subject to extension based on equitable considerations.” See M.J. Ocean, supra, 23 N.J.Tax at 652. “Therefore, ease law dealing with statutes of limitation and the relaxation thereof in contexts other than those *617 relating to taxation are not persuasive in the tax refund area.” Ibid. Equitable relaxation of a limitations period for a tax refund claim “is unavailable except in the most extraordinary circumstances.” Id. at 653.
Such circumstances do not exist here. As noted above, before expiration of the three-year period for seeking a refund, the Chancery Division action concluded, an order awarding fees was entered by the Chancery Division, and cross-appeals were filed in the Appellate Division concerning that order. The estate certainly had sufficient information on which to file a protective refund claim prior to February 23, 2007, the last day on which it could have filed such a claim. While plaintiff may have experienced delays in the resolution of the Chancery Division action occasioned by adjournment requests outside of the estate’s control, this fact alone does not constitute “most extraordinary circumstances” that would justify this court’s extension of the legislatively defined refund claim period. Protracted court proceedings are a predictable aspect of litigation between beneficiaries. The estate, which was represented by counsel at all times relevant to this matter, could easily have foreseen that the Chancery Division action would not be fully resolved, and the amount of expenses incurred by the estate not determined with certainty, until after expiration of the three-year period. This is particularly true here, given the 1'act that the estate’s February 9, 2006 estate tax return was filed just five days before the start of trial in the Chancery Division. A simple letter accompanying that return stating that the trial was poised to commence and that the estate expected to incur additional expenses likely to reduce its estate tax liability would have preserved the estate’s protective refund claim.
Even where equitable considerations can toll a statute of limitations, “[ejquity demands more than good faith; it demands diligence in the protection of one’s own interest.” H.R Acquisitions, supra, 12 N.J.Tax at 69. In light of the information in plaintiffs possession prior to the expiration of the limitations period, and the fact that plaintiff had successfully extended the filing of its estate tax return based on its representations that the Chancery Division action was pending, the court concludes that *618 plaintiff did not adequately protect its interests by filing a timely protective refund claim related to expenses expected to be incurred in the beneficiaries’ action. Thus, even if equitable relief was available in this case, plaintiff would not be permitted to file a late refund claim.
A handwritten note at the bottom of the copy of the February 9, 2006 return submitted by the Director states “litigation—details—additional assets?” and “Attorney’s fee—$218,800 Breakdown.” Plaintiff argues that these cryptic notes are evidence that the Division was aware that the Chancery Division action was ongoing, that the estate might incur additional litigation expenses, and that an additional refund claim would be filed in the future. The record contains no evidence establishing who wrote those notations, when they were written, or what they purport to convey. Moreover, the plain meaning of the notations, regardless of their author and the circumstances of their origin, in no way suggests that the Division was on notice of a potential refund claim by the estate. The court, therefore, concludes that plaintiff has not raised a disputed issue of material fact regarding whether the notations on the February 9, 2006 return constitute evidence of a protective refund claim.
After argument on the cross-motions, plaintiff submitted a certification from James Sabinsky, an accountant who represented the estate during the Chancery Division action. Mr. Sabinsky certifies that at the time that the February 9, 2006 estate tax return was filed “[t]he State also was more aware [sic] of the potential for additional expenses which could not be calculated or reasonably estimated at the time of filing.” Mr. Sabinsky offers no evidence to support this assertion, proffers no written document purporting to constitute notice to the Division of the estate’s potential claim, nor identifies the employee or employees at the Division who were aware that the estate had expressed its intention to seek a further refund of estate tax once the Chancery Division action was concluded.
Mr. Sabinsky also states that “we were of the opinion that no writing or additional information was necessary for it was clear in *619 our minds that the State was on notice of the continuing legal battle causing the uncertainty of the amount of additional expenses.” (emphasis supplied). Thus, Mr. Sabinsky establishes that the estate’s financial representatives were aware of the potential refund claim prior to the February 28, 2007 deadline for filing such a claim but decided not to file a written protective refund claim. The fact that the estate’s accountants made that decision without memorializing their view of the circumstances in a correspondence to the Division or otherwise formalizing the estate’s protective refund claim cannot justify departure from the statutory three-year refund period. This court cannot grant relief from the limitations period based only on the unsubstantiated thoughts of representatives of the estate that the Division was aware that an additional refund claim might eventually be filed by the taxpayer.
Similarly, Mr. Sabinsky certifies that “|w]hen it appeared that a settlement was to be reached between the parties, I contacted Mr. Darren Shields, state auditor ... that amended returns would be forthcoming since now the additional expenses could be determined.” Mr. Sabinsky does not identify the date on which this contact took place, nor its form. According to plaintiff’s summary judgment brief, the beneficiary litigation “ultimately settled in late 2007,” (Pb3), after expiration of the three-year period for seeking a refund. Thus, even if this court were to conclude that Mr. Sabinsky’s “contact” with Mr. Shields constituted the valid submission of a protective refund claim, a conclusion the court is not inclined to make, the contact must have taken place after expiration of the three-year period and would not be a valid basis of relief for plaintiff. The court makes a similar conclusion with respect to Mr. Sabinsky’s reported “contact” with Mr. Shields during the IRS audit, given that the audit occurred after expiration of the limitations period. The court concludes, therefore, that Mr. Sabinsky’s certification is insufficient to create a disputed issue of material fact regarding submission of a timely protective refund claim by plaintiff.
Nor is this a case in which an employee of the Division made a representation or took other action that caused a taxpayer *620 to file a late refund claim. See Toys “R ” Us, Inc. v. Director, Div. of Taxation, 300 N.J.Super. 163, 692 A.2d 111 (App.Div.1997) (Division of Taxation auditor’s representation during audit that certain items were subject to sales tax when, in fact, Division’s policy had changed to not subject those items to sales tax warranted consideration of tolling of refund limitations period). Here, it was plaintiff that made the representation in November 2005 that it had been advised by counsel that it could prepare and file its estate tax return. The subsequent February 9, 2006 return made no mention of the Chancery Division action or the potential for further deductions related to litigation expenses. The record suggests that plaintiff relied on counsel when deciding to file its February 9, 2006, return without a protective refund claim, and not on a representation of a Division employee. In addition, there is no indication in the record that a Division employee encouraged plaintiff to refrain from filing a protective refund claim.
At argument on the cross-motions, the court asked the parties to submit supplemental briefing addressing N.J.A.C. 18:26-3.4, on which neither party relied in their motion papers. That regulation provides
(b) If subsequent to a determination of the estate tax due this State, the amount of the Federal estate tax shall be decreased and the amount allowed as a credit for inheritance, succession or legacy taxes paid to any state ... correspondingly reduced, the estate lax due this Stale shall be reduced accordingly upon submitting satisfactory proof to the Director.
(c) The amount of the estate tax due New Jersey, if any, cannot be determined in any case until the Federal Government has definitively determined the amount of Federal estate tax chargeable on final assessment.
[N.J.A. C. 18:2G—3.4(b) and (c).]
Plaintiff argues that the regulation allows an estate to seek a refund of estate tax whenever an action by the federal government has the effect of reducing the estate’s state tax liability. As the Director correctly notes, however, the regulation applies only to the estates of those who die on or before December 31, 2001. N.J.A.C. Chapter 26, Subchapter 3, Title Heading. No similar regulatory provision applies to the estates of those, such as Frank J. Ehringer, who die after December 31, 2001. See N.J.A.C. Chapter 26, Subchapter 3A (applicable to decedent’s dying after *621 December 31, 2001) R. 2006 d. 196. See 37 N.J.R. 1694(a), 38. In fact, the regulation applicable to the Ehringer estate establishes a three-year period for submitting a refund claim. N.J.A.C. 18:26-3A.12(a). The court notes that a regulation purporting to permit refund claims submitted after expiration of a statutory refund claim limitation period would raise significant legal concerns. See Allen v. Fauver, 167 N.J. 69, 75-78, 768 A.2d 1055 (2001) (holding that a waiver of governmental immunity must be clearly expressed in a statute).
As a final note, the court does not find persuasive the two foreign jurisdiction precedents cited by plaintiff that permit the filing of late refund claims in the estate tax context. In Estate of Allyn v. Illinois, 139 Ill.App.3d 38, 93 Ill.Dec. 584, 487 N.E.2d 28, 31 (1985), Illinois statutes expressly permitted the refund of overpaid estate tax “within one year” of a redetermination by federal taxing authorities and provided that “there shall be a concurrent redetermination” of Illinois estate tax liability when there has been a reassessment of federal estate tax (citation omitted). New Jersey has no similar statutory provisions. The court in Henley v. Boswell, 55 Ala.App. 414, 316 So. 2d 342, 345 (1975), relied on a statute that allowed for a refund “[i]n the event that the federal authorities shall ... increase or decrease the amount of the federal estate taxes as a result of appeal or otherwise ...” without a specified limitations period for seeking such a refund (citation omitted). As noted above, the similar New Jersey statute and applicable regulation contain a three-year limitations period. Compare N.J.S.A. 54:10A-13 (creating an additional four-year period for seeking a refund of corporate business tax after a change in the taxpayer’s federal tax obligation).
A Judgment affirming the Director’s final determination is enclosed.