PER CURIAM.
In these three consolidated cases, plaintiffs Trump Plaza Associates, Trump Taj Mahal Associates and Trump Marina Associates (collectively plaintiffs) appeal from the Tax Court’s grant of summary judgment in favor of the defendant Director, Division of Taxation (the Director or Division). Plaintiffs had not been aware that they had been mistakenly charged an embedded sales tax on their purchases of electricity, which should have been exempt from such tax. The Tax Court denied plaintiffs’ request to equitably estop the Director from asserting the four-year statute of limitations applicable to refunds based on the embedded tax. N.J.S.A. 54:32B-20(a). We conclude that plaintiffs have failed to establish sufficient facts to apply the extraordinary relief of estoppel against a taxing authority, and we affirm.
These are the relevant facts adduced from the record.
As part of the energy tax reform legislation effective January 1, 1998 a six percent sales and use tax was imposed on the sale of utility services, including electricity. N.J.S.A. 54:32B-3(b)(7); P.L. 1997, c. 162. Electricity purchased under an Off-Tariff Rate *559 Agreement (OTRA), entered into prior to January 1, 2008 however, was exempt from sales tax. N.J.S.A. 54:32B-8.47(b).
Normally, sales tax charges must be “stated, charged and shown separately” pursuant to N.J.S.A. 54:32B-12(a). However, the Legislature specifically mandated that “[a]ll sellers of energy or utility service shall include the tax imposed by the ‘Sales and Use Tax Act’ within the purchase price of the tangible personal property or service.” N.J.S.A. 54:32B-14(e).[1]
In 1996, plaintiffs each entered into such a contract known as an OTRA, or service agreement, with Atlantic City Electric (ACE), effective March 17, 1997.[2] The OTRAs were filed with and approved by the BPU before January 1, 1998. Although the record is silent on this issue, the parties presumed that when ACE modified its computer programs to charge an embedded sales tax according to the newly enacted legislation, it failed to properly account for what should have been the continuing exemption for customers governed by OTRAs.
According to Frederick T. Cunningham, Vice President of Legal Affairs for Trump Plaza, Stephen S. Oskiera, Vice President of Finance for Taj Mahal, and Daniel M. McFadden, Vice President of Finance for Trump Marina, ACE did not charge or collect sales tax on electricity purchased by plaintiffs under the OTRAs from March 17, 1997, through December 31,1997.
Beginning on January 1, 1998, and through the expiration of the OTRAs on March 17, 2004, ACE collected and remitted sales tax on electricity purchased by plaintiffs under the OTRAs and none of the invoices separately itemized the sales tax. Both plaintiffs and the Director agree that the electricity purchased by plaintiffs *560 from ACE should not have been subject to sales tax. ACE and another provider, Public Service Electric and Gas Company (PSE&G), entered into OTRAs with thirteen and twelve of their customers, respectively, and improperly collected sales tax from each of those customers for electricity purchased under the agreements. In an effort to promote “economic development” in this State, the BPU adopted specific standards for the OTRAs, which allowed customers to negotiate a lower rate in exchange for the agreement to utilize the supplier exclusively.
Plaintiffs were not aware that ACE was charging sales tax “until sometime in the Spring of 2005 when Trump’s [present] counsel suggested that Trump investigate whether ACE was improperly imbedding sales tax on its invoices to Trump.”
Lori Armstrong, regional account coordinator for ACE, confirmed that each of the plaintiffs had OTRAs filed with the New Jersey BPU and that amounts paid between January 1, 1998 and March 31,2001 included an embedded 6% sales tax.
On July 20, 2005, plaintiffs filed claims with the Division for refunds of sales tax paid to ACE for electricity purchased under their respective OTRAs during the period of April 1, 2001, through March 17, 2004. The Division granted the refunds by letter dated January 20, 2006.
One year later, on July 21, 2006, plaintiffs filed similar claims for refunds of sales tax paid under the OTRAs during the period of January 1, 1998, through March 31, 2001. The Division denied the refund requests of $539,614.21 for Trump Plaza, $1,486,783.62 for Taj Mahal and $670,231.59 for Trump Marina, by letters dated September 22, 2006. The Division denied the refunds because the requests were filed out of time.
As to the issue of sufficient diligence to uncover the embedded tax, plaintiffs detañed the internal accounting procedures required by the Casino Control Commission. According to McFadden, each entity employed a Director of Facilities, who was “directly responsible for the annual budget” and who received, reviewed and approved each invoice issued by ACE during the audit period; no director or manager identified or reported any discrepancy *561 between the amount paid to ACE and the budget for energy consumption. McFadden also reported that the Division conducted six audits of plaintiffs’ sales tax reporting and compliance but no overpayment was identified.
Plaintiffs twice retained the accounting firm of Arthur Anderson LLP. First, Arthur Anderson conducted yearly audits of accounting procedures and financial statements for the years of 1998 through 2001. Second, it conducted a separate audit in 1999 to identify overpayments of sales tax for the years of 1995 through 2000 and was compensated with fifteen percent of all refunds, credits and reductions received as a result. In 2003, plaintiffs retained Ernst & Young LLP to audit sales tax payments for the years of 2001 through 2004 and identify overpayments; Ernst & Young was compensated with twenty-five percent of all refunds, credits and reductions received. Neither accounting firm identified overpayments with respect to electricity purchased under the OTRAs.
In urging that they were diligent in pursuing the matter, plaintiffs submitted a certification from a certified public accountant opining that the retention of an outside advisor to conduct a sales tax review exceeds the industry norm of care. The record also contains two certifications from companies who were also improperly charged sales tax under their respective OTRAs with either ACE or PSE & G; the principals certified that they were not aware of the charges until notified by plaintiffs’ law firm in 2006.
There is no dispute that the refund requests were untimely filed, and the refunds would have been paid had the requests been timely. On cross-motions for summary judgment, Judge Small, in the Tax Court, defined the issue as whether the four-year statute of limitations should be applied “because of the manner in which the sales tax was ‘collected’” or whether there should be an “equitable exception” in this case. In his opinion, Judge Small
conclude[d] that the statutorily enacted four-year limitations period is extended neither by (1) the legislature’s enactment of a statute “embedding” (or hiding) the sales tax by not requiring that it be separately stated from the purchase price, nor *562 (2) the failure of the taxpayers, despite expensive, extensive, and ineffective efforts, to discover their overpayment of millions of dollars in less than four years.
He did not rale on the “wisdom” of the legislature’s decision to allow the tax to be imbedded. He reviewed the evidence presented by plaintiffs to show their due diligence but found that plaintiffs “failed to show that any of their Facilities Managers, Directors of Facilities, audit department, or outside auditors checked one of the many bills that they received from ACE to see if the charges were correct.” The judge found that plaintiffs “chose not, or failed to examine their bills[,]” that ranged between $100,000 and $1 million per month, and “[t]he rest of the New Jersey taxpayers who have a right to be protected by statutes of limitations are now asked to underwrite this oversight and less than scrupulous bill paying practice.”
After noting that other large customers of ACE and PSE & G were similarly unaware of the improper sales taxes charged under their respective OTRA agreements, the judge again questioned whether the Division and New Jersey taxpayers should have to indemnify plaintiffs for their failure to “eheck[ ] their electricity bills against the OTRA rate schedules.” Indeed, the judge found that the error could have been discovered, and he cited a specific example of one such error that he found when he compared the bills to the contract with ACE. He concluded that the equities for extending the four-year statute of limitations “hardly compelling,” and there was no reason for the Division to indemnify plaintiffs.
The judge rejected plaintiffs’ argument that the statute of limitations period is suspended when the tax is not separately stated. “[Wjhether the State is shortchanged or overpaid, the applicable statute of limitations entitles it, and the other New Jersey taxpayers, to repose after a four-year period.” He entered a judgment for the Director and dismissed plaintiffs’ complaint. This appeal followed.
On appeal, plaintiffs urge that the judge erred by finding that the Director was not estopped from asserting the four-year statute of limitation; the statute should have been tolled; and plaintiffs were denied due process when charged an embedded sales tax on an exempt purchase of electricity.
*563 We first note that the doctrine of equitable estoppel is rarely invoked against a governmental entity. Middletown Twp. Policemen’s Ben. Assoc, v. Twp. of Middletown, 162 N.J. 361, 367, 744 A.2d 649 (2000). However, the Court “has long held that the prevention of manifest injustice provides an exception to the general rule.” Aqua Beach Condo. Ass’n v. Dep’t of Cmty. Affairs, Bureau of Homeowner Prot., New Home Warranty Program, 186 N.J. 5, 20, 890 A.2d 922 (2006). Significantly, we have held that “the application of principles of estoppel [is] particularly inappropriate where the collection of taxes by a public body is involved, except in unusual circumstances.” N.J. Tpk. Auth. v. Twp. of Washington, 137 N.J.Super. 543, 552, 350 A.2d 69 (App. Div.1975), aff'd o.b., 73 N.J. 180, 373 A.2d 652 (1977). The Tax Court has held that equitable relief “is not available in the context of a stale claim for a tax refund[.]” Estate of Ehringer v. Dir., Div. of Taxation, 24 N.J.Tax 599, 616 (Tax 2009), aff'd, 412 N.J.Super. 316, 990 A.2d 678 (App.Div.2010).
“In order to invoke the doctrine of equitable estoppel against a public official or public entity, the party claiming the estoppel must demonstrate detrimental reliance on the action or inaction of the official or entity.” M.J. Ocean, Inc. v. Dir., Div. of Taxation, 23 N.J.Tax 646, 655 (Tax 2008), aff'd o.b., No. A-3228-07, 2009 WL 62943, 2009 N.J.Tax LEXIS 2 (App.Div. January 12, 2009), certif. denied, 198 N.J. 473, 968 A.2d 1189 (2009). In fact, “the party seeking the benefit of estoppel has the burden of establishing that an officer of the State, conscious of the State’s true interest and aware of the private owner’s misapprehension, stood by while the private owner acted in detrimental reliance.” Newark v. Natural Res. Council in Dep’t of Envtl. Prot., 82 N.J. 530, 545, 414 A.2d 1304, cert, denied, 449 U.S. 983, 101 S.Ct. 400, 66 L.Ed.2d 245 (1980).
Here, the record is devoid of evidence of any reliance on the Director. In fact, in an effort to show their due diligence, plaintiffs highlight the efforts they undertook on their own behalf to make certain that they were paying only those taxes that they were required to pay. During the tax years involved, plaintiffs *564 hired two large accounting firms and their current counsel’s law firm to review their financial records and specifically, to review their sales tax obligations. In addition to auditing their financial records in general, Arthur Anderson was retained in 1999 on a contingency basis to examine the accounts payable and “audit their New Jersey sales and use tax payments----” Ernst & Young was retained in 2003 for a similar review of sales tax payments. Further, plaintiffs retained its current counsel to audit the sales tax records in 2005, when the error in billing was finally discovered. Nothing supports the claim that they detrimentally relied upon the Director not to collect tax on exempt purchases. Further, the Division claims that it was not aware that it had collected or received the sales tax for which the refunds were sought and was relying upon ACE’s representation that such taxes had been collected and remitted.
We also reject plaintiffs’ argument that it demonstrated any unusual or exceptional circumstances necessary to advance an estoppel argument sufficient to defeat the rule of strict construction for statutes of limitations in tax matters.
Plaintiffs rely on several cases as the “backdrop of decisional law” to support their claim of “most extraordinary circumstances.” First, plaintiffs cite Airwork Service Div. v. Dir., Div. of Taxation, 97 N.J. 290, 294, 478 A.2d 729 (1984), cert. denied, 471 U.S. 1127, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985), where the taxpayer sought to apply the doctrine because it had relied upon an earlier statement published by the Division that the service it performed was exempt from the sales tax. However, the Court found that because the service was specifically taxable by statute, and no exemption was present, taxpayer’s estoppel argument failed. Id. at 299, 478 A.2d 729. The Court concluded that “[t]he strong public and governmental interest in the collection of the tax imposed by the Legislature will usually outweigh the asserted reliance by a taxpayer, especially when such reliance is claimed to be based on unofficial statements and equivocal administrative inaction.” Ibid. Plaintiffs fail to identify with specificity the focus of their reliance.
*565 Plaintiffs also cite Toys “R” Us, Inc. v. Dir., Div. of Taxation, 300 N.J.Super. 163, 692 A.2d 111 (App.Div.1997), to establish the existence of extraordinary circumstances to support an estoppel claim. There, the taxpayer paid a deficiency assessment based on an auditor’s reliance on a published newsletter that had been superseded at the time of the audit. Id. at 166-67, 692 A.2d 111. A few months later, the taxpayer learned of the Division’s new position and filed for a refund, but the refund request was denied as untimely. Id. at 167, 692 A.2d 111. We acknowledged that the taxpayer was subject to the ninety-day limitation period in N.J.S.A. 54:10A-19.2 but found that, under these particular facts, the assessment may have been a mistake “if the Division had already changed its position” at the time the audit assessment was imposed. Id. at 171-72, 692 A.2d 111. We remanded for a “[cjareful examination of the facts ... in order to determine the equities and reach a fair result.” Id. at 172, 692 A.2d 111.
No one questions that the collection of sales tax by ACE in this case was a mistake. However, that is only the beginning of the inquiry. “The application of this equitable doctrine is extremely fact-sensitive.” Airwork Serv. Div. v. Dir., Div. of Taxation, supra, 97 N.J. at 297, 478 A.2d 729. Further, “as a general rule, ‘[sjtatutes of limitations in tax statutes are strictly construed in order to provide finality and predictability of revenue to state and local government.’ ” Estate of Ehringer, supra, 24 N.J.Tax at 610 (quoting Bonanno v. Dir., Div. of Taxation, 12 N.J.Tax 552, 556 (Tax 1992) (additional citation omitted)). In H.B. Acquisitions, Inc. v. Dir., Div. of Taxation, the judge explained, “[pjublic policy discourages suits for the refund of taxes erroneously paid or illegally collected. It is a well established principle that statutes of limitations applicable to suits against the government are conditions attached to the sovereign’s consent to be sued and must be strictly construed.” 12 N.J.Tax 60, 65 (Tax 1991) (citations and quotations marks omitted).
The Tax Court has observed that “[t]he four year limitations period contained in N.J.S.A. 54:32B-20(a), is ... a condition to New Jersey’s waiver of sovereign immunity as to refund claims and thus is not subject to extension based on equitable consider *566 ations.” M.J. Ocean, supra, 23 N.J.Tax at 652. “Consequently, even though courts may have indicated that under certain circumstances, statutes of limitation can and should be relaxed, those rulings to not apply to tax matters where such relaxation is unavailable except in the most extraordinary circumstances.” Id. at 652-53. Plaintiffs have not surmounted this significant burden.
As Judge Small observed in his opinion, plaintiffs had all the information necessary to discover ACE’s billing error at the initial time of collection. The “sophisticated tax free OTRA agreements[ ]” included “a complex, but fully disclosed rate schedule, with rates varying by such variables as time of year, quantity of purchase, and time of day[,]” that was the product of negotiations between ACE and plaintiffs. He found that
[e]ach invoice to the Trump Entities disclosed the quantity of electricity purchased at each rate. Had the Trump Entities’ Facilities Managers, Facilities Directors, accounting department, or outside advisors taken the time to check the amount charged for the quantity consumed, they would have discovered (as did Blank Rome) that the rates being charged were in excess of the amounts specified in the OTRA agreements.
In this context, the Tax Court rejected plaintiffs’ reliance on Toys “R” Us, supra, 300 N.J.Super. at 172, 692 A.2d 111, concluding that factually, the cases were “entirely different. ACE overcharged the Trump Entities and remitted that overcharge to the State. The Trump Entities willingly, absentmindedly, or carelessly paid (not as the result of an audit by the Division of Taxation) those overcharges.” As a result, “[t]he Director cannot be said to be equitably estopped from asserting protection under a statute of limitations when so many others responsible for and to the Trump Entities failed to perform basic bill cheeking so that the Trump Entities could timely assert their rights.” Indeed, “[ejquity demands more than good faith; it demands diligence in the protection of one’s own interests.” H.B. Acquisitions, supra, 12 N.J.Tax at 69.
We reject, as without merit, plaintiffs’ arguments including the challenge to the finding that the Division was “merely a passive entity that received the excessive payments” charged by its agent, ACE. Since the refund requests were not timely filed, it is irrelevant whether ACE was acting within the bounds of its actual *567 or apparent authority in collecting the sales tax on exempt purchases or whether the Division “stood in ACE’s shoes.”
We likewise reject plaintiffs’ additional argument that the Division should be faulted because it should have discovered the “overcharges” during the six sales tax audits conducted over the years at issue. The Division would have little reason to audit or even look at the electricity invoices because plaintiffs had an exemption under the OTRAs. The generalized obligation of the Division to uncover overpayments as well as underpayments has little resonance where the overpayments would be found in exempt purchases that would be beyond the scope of a Division audit.
We also reject, without further comment, the argument that the Tax Court erred in finding that plaintiffs should have pursued ACE for breaching the OTRAs. Such comments were dicta and beyond the scope of the narrow holding of this case.
Plaintiffs’ challenge to the Tax Court’s finding that a comparison of the OTRA rates to the billing invoices would have revealed the tax because the “discrepancies ... do not equate to the sales tax rate imposed during that period!,]” and that sometimes the charges were less than the contract rate is likewise without merit. Regardless of whether the discrepancy between the billing rates is exactly equal to the embedded six percent sales tax, the undisputed fact remains that there was a readily apparent discrepancy when the contract was compared to the invoices; an inquiry into the basis for that discrepancy would have revealed, and in fact did reveal, the embedded sales tax charges. The error was discoverable because plaintiffs’ counsel discovered the error, albeit after the statute of limitations had passed for the periods raised in this appeal.
In sum, despite ACE’s mistake in including the embedded sales tax in plaintiffs’ invoices, plaintiffs have failed to show unusual or extraordinary circumstances necessary for applying equitable estoppel against the Division. Plaintiffs have also failed to advance any evidence of reliance, much less detrimental reliance, on the Division to charge or not charge sales tax on exempt purchases.
*568 Plaintiffs next claim that the Director did not “turn square corners” in its dealings with plaintiffs, an argument not addressed by the Tax Court.
There is no question that when dealing with the public, the government must “turn square corners,” or act “solely in the public interest.” F.M.C. Stores Co. v. Borough of Morris Plains, 100 N.J. 418, 426, 495 A.2d 1313 (1985). Plaintiffs argue that the Division’s failure to ensure “that it was not collecting a hidden tax on exempt purchases[ ]” fails to adhere to this doctrine.
In support of the argument, plaintiffs rely on Gastime, Inc. v. Dir., Div. of Taxation, 20 N.J.Tax 158 (Tax 2002). In Gastime, the Division issued a Notice of Assessment that contained erroneous information about the taxpayer’s right to appeal or contest the assessment. Id. at 163. The court accepted the Division’s characterization of the error as “inadvertent” but found that “[ijnadvertence ... does not relieve the government of its obligation to deal fairly, forthrightly, and scrupulously with the public.” Id. at 168. The court specifically rejected taxpayer’s estoppel argument, but held that “[b]ecause the Notice of Assessment contained misleading information as to the right to appeal to the Tax Court, ... the Director and the Division failed to turn square corners.” Ibid. The court did rule that “[n]on-applicability of the doctrine of equitable estoppel does not preclude application of the requirement that Director and Division turn square corners in dealing with taxpayers.” Id. at 165.
No such conduct is apparent here. The Division had no way of knowing that the monthly returns filed by ACE remitting the sales tax it collected from its many customers contained taxes charged on plaintiffs’ exempt purchases. Apparently, even ACE was unaware of its error until the issue was brought to its attention. Indeed, the Tax Court found that “[t]he State did not overcharge Trump — ACE did.”
As we noted, Judge Small concluded that “[b]y statute no tax was due on electricity purchased by the Trump Entities under the OTRA’s, ... there would be no reason for the Division of Taxation to have audited either those invoices or those accounts.” More *569 significantly, the judge observed that plaintiffs incurred “employee expense in excess of $48 million in their non-casino accounting and auditing departments (about $12 million per year)[,]” had employees specifically hired to review and approve every electricity invoice received during the audit period and hired outside accounting and law firms to review their tax obligations, “[y]et they have failed to show that any of their Facilities Managers, Directors of Facilities, audit department, or outside auditors checked one of the many bills they received from ACE to see if the charges were correct.” The court found that “[njeither the Director not the legislature was the cause of plaintiffs’ mistakes.” We agree and reject this argument.
Finally, plaintiffs argue that “[t]he New Jersey legislature denied the Trump Entities’ [procedural] due process rights by prohibiting ACE from informing the Trump Entities that sales tax was being charged.” Because there was no notice of the embedded sales tax, and the charges were only discovered “after conducting an exceptional amount of due diligence,” plaintiffs maintain that the statute of limitations should not begin to run until the sales tax charges were discovered in the Spring of 2005. In sum, plaintiffs argue that their claim for a refund filed within sixteen months of the discovery “should be treated as timely.”
The Director responds that plaintiffs were charged with notice of the law requiring the tax to be imbedded and plaintiffs were provided with “the documentation indicating sales tax was being charged ... at the time of collection” but simply faded to discover the error in a timely manner.
In a footnote, the Tax Court noted that it had not addressed why the Legislature chose to require the tax to be imbedded in the purchase price for just this instance because it was
not a proper area of inquiry for this court unless constitutional due process issues are raised. The standard under which tax statutes are judged under the Due Process Clause, rational basis, is an easy one for the State to meet. This court does not sit in judgment of the wisdom of permissible choices made by the Executive and Legislative branches of government.
*570 The court did note that “[t]o claim that the statutory requirement that the tax not be separately stated somehow entitled the Trump Entities to an unlimited time to seek a refund is absurd.”
As support for their due process argument, plaintiffs first cite N.J.S.A. 54:4-63.35, the property tax statute that requires local tax assessors to give property owners notice when an omitted assessment is placed on the tax rolls. Relying on the “similar” case of City of Camden v. Camden Masonic Ass’n, 9 N.J.Tax 331 (Tax 1987), aff'd, 11 N.J.Tax 88 (App.Div.1989), certif. denied, 121 N.J. 594, 583 A.2d 300 (1990), plaintiffs argue that “due process dictates that the Trump Entities be permitted to pursue their refund claims which were filed within a reasonable period after discovering that they paid the tax.”
In City of Camden, which began as an in rem tax foreclosure proceeding by the municipality, the city admitted that it never gave the property owner notice of the revocation of the property’s exemption or notice of the omitted assessment placed on the property after an inspection by the assessor revealed that the property had been vacant for some time. Id. at 335-36. The Chancery Division determined that “equity required” that the matter be bifurcated to allow the Tax Court to enter judgment as to the exempt status of the property and correctness of the procedure and amount of the assessment. Id. at 335. Because the municipality had not complied with the notice provisions of N.J.S.A. 54:4-63.35, the Tax Court invalidated the 1983 and 1984 omitted assessments and ruled that the property owner “did act within a reasonable time to contest the [regular] assessment for 1985[.]” Id. at 342-44. Specifically, the court ruled that “[t]he requirements of due process have not been met unless the person charged with an excise has been given an opportunity to be heard as to the validity and amount of the levy at some point in the proceedings before the excise becomes irrevocably final.” Id. at 343.
Unlike the circumstances in the property tax notice in City of Camden, plaintiffs here were charged with knowledge that N.J.S.A. 54:32B-14(e) mandated that “[a]ll sellers of energy or *571 utility service shall include the tax imposed by the ‘Sales and Use Tax Act’ within the purchase price of the tangible personal property or service!,]” and thus had notice of the tax. See Peoples Exp. Co., Inc. v. Dir., Div. of Taxation, 10 N.J.Tax 417, 434 (Tax 1989) (“Plaintiff is charged with knowledge of the law and cannot now defeat the imposition of statutory deadlines by pleading lack of knowledge or awareness.”). Plaintiffs do not, and cannot, argue ignorance of that statute. Further, plaintiffs had an opportunity to be heard as to their challenge to the mistaken collection of sales tax pursuant to N.J.S.A. 54:32B-20(a). As the Tax Court found, the taxpayers failure to exercise “great care” in the handling of their affairs, and that failure to discover ACE’s error does not translate to a denial of due process or lack of notice.[3]
In sum, the Tax Court was not impressed with plaintiffs’ claim that the embedded sales tax was only discovered after an “exceptional amount of due diligence.” With the enactment of N.J.S.A. 54:32B-14(e), the Legislature gave notice that sales tax would be embedded in the purchase price of electricity. Although ACE collected the tax improperly or by mistake, the Legislature provided a means for plaintiffs to obtain a refund pursuant to N.J.S.A. 54:32B-20(a), which even contemplated taxes collected “erroneously, illegally or unconstitutionally,” provided that the taxpayer filed for the refund within the four-year period allotted. As explained by the Tax Court in Commercial Refrigeration & Fixture Co. v. Dir., Div. of Taxation, 184 N.J.Super. 387, 2 N.J.Tax 415, 419, 446 A.2d 210 (Tax 1981):
Refund moneys are available to be claimed by a taxpayer or by a person required to collect the tax according to well-defined procedures. An otherwise eligible taxpayer or vendor who does not comply with the established procedures waives his entitlement to any refund. After the two-year limitation period for the filing of a refund application has passed, the State is entitled to assume that its tax revenues need not be refunded under any circumstances. The limitation period is mandatory and is justified by the need for predictability of revenues by the State.
With no denial of due process, and with plaintiffs having failed to file a timely request for a refund or prove sufficient facts to *572 warrant the extraordinary relief of an equitable extension of time to file for that refund, the Tax Court properly granted summary judgment in favor of the Director.
Affirmed.

 N.J.S.A. 54:32B-20(a) provides in relevant part: “In the manner provided in this section the director shall refund or credit any tax, penalty or interest erroneously, illegally or unconstitutionally collected or paid if the application to the director for such refund shall be made within four years from the payment thereof."

 The parties stipulated that each of the OTRA agreements were to be effective March 17, 1997, although the contracts in the record include different dates.

 Plaintiffs reliance on the notice provisions of N.J.S.A. 54:49-6, which require the Director to give notice of additional assessments imposed after an audit of returns or reports filed with the Division, fails for the same reasons.